**Judith A. WARD, et al.,
Plaintiffs-Appellants,**

**v.**

**COUNTY OF SAN DIEGO, et al.,
Defendants-Appellees.**

**No. 84–6362.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 4, 1985 *.

Decided March 3, 1986.

Amended June 16, 1986.

* The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir. 3(f).

George Weingarten, San Diego, Cal., Fred Okran, Los Angeles, Cal., for plaintiffs-appellants.

Phillip L. Kossy, San Diego, Cal., for defendants-appellees.

Before GOODWIN, TANG, Circuit Judges, and JAMESON **, District Judge.

TANG, Circuit Judge:

Appellant Judith Ward initiated this action under 42 U.S.C. § 1983 to recover damages sustained from being strip searched at a San Diego County detention facility. She appeals the district court's grant of summary judgment to appellee John Duffy and the denial of her petition for attorney fees. We reverse in part, affirm in part, and remand.

**FACTS**

On May 30, 1981 Ward was arrested for the misdemeanor offense of refusing to sign a promise to appear. She was taken to Los Colinas Womens Detention Facility for booking. In accordance with facility policy, and before a determination was made as to whether she was eligible for an own recognizance (O.R.) release, Ward was required to submit to a strip search that included a visual body cavity inspection.

Ward alleged that the strip search performed under Sheriff John Duffy's authority violated her fourth amendment rights. She filed for preliminary injunction under 42 U.S.C. § 1983. In February 1983 the district court enjoined Duffy's policy of conducting strip searches. We vacated the injunction in March 1984 on the ground that Ward lacked standing to seek injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The case was remanded for further proceedings.

Upon remand, the district court granted Duffy's motion for summary judgment holding that because the law was not clearly established at the time of the strip search, Duffy enjoyed qualified, good faith immunity from personal liability under 42 U.S.C. § 1983. The district court also de-

nied Ward's motion for attorney fees. It held that its initial preliminary injunction, vacated by this court, had no precedential force or effect and that Ward could not be considered a prevailing party entitling her to attorney fees under 42 U.S.C. § 1988.

**DISCUSSION**

JURISDICTION

Duffy contends initially that this court lacks jurisdiction because rather than appealing from the order entering judgment, Ward appealed from the denial of her motion for reconsideration of the summary judgment award. We disagree.

A federal rule of civil procedure 59(e) motion for reconsideration tolls the filing period for an appeal from an order entering judgment. Fed.R.App.P. 4(a)(4)(iii). Properly labeled, Ward's attempted notice of appeal from entry of judgment would have been timely filed.

Ward, however, mistakenly appealed from the district court's denial of Ward's motion for reconsideration. Unless the opposing party can show prejudice, courts of appeal may treat an appeal from a postjudgment order as an appeal from the final judgment. *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Poe v. Gladden*, 287 F.2d 249, 251 (9th Cir.1961); *Daily Mirror v. New York News, Inc.*, 533 F.2d 53, 56 (2d Cir. 1976). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. at 181–82, 83 S.Ct. at 230.

Because Duffy was neither misled nor prejudiced by Ward's mislabeled appeal, we treat Ward's appeal from the denial of her motion for reconsideration as a timely appeal from the district court's entry of judgment.

** Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

## QUALIFIED IMMUNITY

■ Government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The *Harlow* test examines the "objective reasonableness" of the official's conduct.

In *Capeoman v. Reed,* 754 F.2d 1512, 1514 (9th Cir.1985), this court interpreted the meaning of *Harlow*'s "clearly established" rights standard. We concluded that in the absence of binding precedent, a court should look at all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established. *Id.* An additional factor is the likelihood that the Supreme Court or the Ninth Circuit would have reached the same result as courts that had already considered the issue. *Id.* at 1515.

■ The question of reasonable searches turns on a balancing of the interests and facts in particular circumstances. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Although a less stringent standard than probable cause may perhaps justify strip searches of minor offense arrestees, see *id.* at 560, 99 S.Ct. at 1885, the facts upon which a strip search is based must be capable of of measurement against some objective standard. *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

■ We first note that *Capeoman* places the responsibility for keeping abreast of constitutional developments in criminal law squarely on the shoulders of law enforcement officials. Given the power of such officials over our liberty, and sometimes even over our lives, this placement of responsibility is entirely proper. Law enforcement officials must be cognizant not only of how far their authority extends, but also of the point at which their authority ends. At the same time, however, we do not read *Capeoman* to require of most government officials the kind of legal scholarship normally associated with law professors and academicians. A reasonable person standard adheres at all times.

With the foregoing in mind, we survey the legal landscape in May of 1981 and we conclude that the law was sufficiently clear in early 1981 so as to expose a public official who unreasonably authorized blanket strip searches of minor offense arrestees to civil liability under 42 U.S.C. § 1983.

As to the strip search policy itself, no published state or federal case since *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (test of reasonableness under fourth amendment requires a balancing of the need for particular search against the invasion of personal rights the search entails) upholds the constitutionality of a blanket policy of strip searches of minor offense arrestees. In balancing arrestees' fourth amendment rights against the security problems in detention facilities, courts upheld the practice of strip searches on two sometimes overlapping grounds. First, a strip search could be justified if the arrest was custodial. *See e.g., United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973) (full search incident to custodial arrest for probable cause is reasonable); *Logan v. Shealy,* 500 F.Supp. 502 (E.D.Vir.1980) (strip search of DWI arrestee held for four hours or until some responsible person could pick arrestee up is reasonable), *reversed,* 660 F.2d 1007 (4th Cir. October 1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *People v. Seymour,* 84 Ill.2d 14, 48 Ill.Dec. 556, 416 N.E.2d 1078 (1981) (strip search incident to custodial arrest where officers reasonably suspected arrestee possessed both a weapon and contraband is reasonable).

Second, a strip search could be justified if the arresting officer had at least a reasonable suspicion that the arrestee possessed a weapon or contraband. *United*

*States v. Klein,* 522 F.2d 296 (1st Cir.1975) (probable cause that arrestee possessed contraband justified strip search). *Armstrong v. Borie,* 494 F.Supp. 902 (E.D. Penn.1980) (reasonable suspicion that arrestee possessed dangerous object (keys) justified strip search). *See also Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (strip search of pre-trial detainees after contact visit is reasonable).

In *Tinetti v. Wittke,* 479 F.Supp. 486, 490 (E.D.Wis.1979), *aff'd,* 620 F.2d 160 (7th Cir.1980), a case similar to our own, both the district court and the Seventh Circuit found unconstitutional a strip search of a person arrested for a non-misdemeanor traffic violation who was unable to post a $40 cash bond. There, as here, no reasonable suspicion existed that a weapon or contraband would be discovered on the arrestee. We find the fact that the arrestee in *Tinetti* was charged with a non-misdemeanor traffic violation whereas Ward was charged with a misdemeanor of refusing to sign a promise to appear to be a distinction of little consequence.

We note too that the district court below in the first instance found the law sufficiently clear and granted Ward's motion for a preliminary injunction against Duffy's policy of strip searches. We vacated the injunction because of the *Lyons* teaching on standing and not on a determination as to the reasonableness of the policy.

Pre-1981 strip search cases, including *Tinetti,* harbinged our decision in *Giles v. Ackerman,* 746 F.2d 614, 619 (9th Cir. 1984). In *Giles* we established that strip searches of arrestees for a minor offense are unconstitutional absent individualized suspicion that such arrestee is carrying or concealing contraband or is suffering from a communicable disease.

In many ways the facts before us suggest the easiest possible case. First, Duffy's policy subjected Ward and other minor offense arrestees to a strip search even before an own recognizance (O.R.) release determination was made. Second, it was unlikely that arresting officers reasonably suspected that Ward possessed a weapon or contraband. In most instances the unreasonableness of a strip search conducted prior to an O.R. release determination is plain.

■ Duffy argues that he is shielded from civil liability because nine months prior to the search of Ward he was told by the Superior Court of California in *Hudler v. Duffy,* No. 404148 (Aug. 14, 1980), that the strip search policy was constitutional. The record indicates, however, that *Hudler* was a class action suit brought by custodial detainees. There is no suggestion that the *Hudler* decision involved arrestees awaiting own recognizance (O.R.) release determination.

■ Second, assuming *arguendo* that *Hudler* did speak to O.R. eligible detainees, the pronouncement of one state court on a constitutional issue does not necessarily shield a government official from liability. *See Capoeman v. Reed,* 754 F.2d at 1514 (in the absence of binding precedent, a court should look at all available decisional law including state courts, other circuits, and district courts to determine whether a right was clearly established). In light of contrary authority from federal courts, the decision by the California Superior Court did not *ipso facto* vindicate Duffy's policy.

■ If no reasonable ground existed for Duffy's blanket strip search policy as applied to Ward, we hold that the law in May of 1981 was sufficiently clear to subject Duffy to liability for civil damages under 42 U.S.C. § 1983. We remand to the district court to determine the reasonableness of the strip search policy. A finding of liability would necessitate a determination of damages.

## ATTORNEY FEES

Ward argues entitlement to attorney fees in that the dissolved injunction put Duffy on notice that the strip searches in question could again be held unconstitutional. Even if true, the district court's determination that Ward did not achieve prevailing party status was not clearly erroneous.

A "prevailing party" for § 1988 purposes does not necessarily have to obtain formal relief. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). A party can achieve "prevailing party" status by establishing a "clear, *causal relationship* between the litigation brought and the practical outcome realized." *Rutherford v. Pitchess*, 713 F.2d 1416, 1419 (9th Cir.1983).

Ward's lack of standing in her original challenge rendered illusory the practical outcome she temporarily received (the preliminary injunction). A party may be awarded attorney fees as a prevailing party at an interlocutory stage of the proceeding if the party prevails on the merits as to one or more of his or her claims. *Hanrahan v. Hampton*, 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). An erroneously granted injunction cannot be the basis for an award of attorney fees as the prevailing party.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.