Tracy Ray VAUGHN, Plaintiff,

v.

James D. RICKETTS, et al., Defendants.

No. CIV 84–624 PHX–CAM.

United States District Court, D. Arizona.

May 29, 1987.

Professor Robert Bartels, ASU Law School Clinic, College of Law, Arizona State University, Tempe, Ariz., for plaintiff.

Ronald J. Greenhalgh, Atty. General's Office, State of Arizona, David M. Ochoa, Bruce Feder, Feder Law Office, P.A., Marc Budoff, Budoff & Ross, Bryan B. Perry, Alice L. Bendheim, Daniel B. Patterson, E. Reid Southern, Gary Scales, Phoenix, Ariz., Randy Jenkins, Peoria, Ariz., Morton Rivkind, Philip Seplow, Mike Kimerer, Antonio R. Zuniga, Phoenix, Ariz., for defendants.

1. The individual actions have been consolidated into the above captioned case.

2. In a slightly different context, the Supreme Court recently noted that when a court is presented with a claim of qualified immunity, "[a]ll it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions...." Hence, at this juncture, this Court will accept the Plaintiffs' alleged facts as true and ascertain whether Defendants' alleged conduct may have violated any rights that were clearly established at the time of the contested conduct. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2816, 86

## ORDER

MUECKE, District Judge.

Having considered the Defendants' Motion for Summary Judgment, filed November 20, 1986, the Plaintiff's Response, filed February 18, 1987, and the Defendants' Reply, filed March 13, 1987, this Court hereby finds and concludes as follows:

## FACTS

This action concerns the constitutional implications raised by a series of digital rectal cavity searches conducted by prison authorities at the Arizona State Prison at Florence. Approximately eighty residents of the maximum security unit at the prison were subjected to the searches. The searches were conducted on the 15th, 22nd and 23rd of March in 1984. The prisoners subjected to the searches subsequently filed suits alleging deprivation of their rights under the fourth, eighth and fourteenth amendments of the United States Constitution pursuant to 42 U.S.C. Section 1983.[1] In their Motion for Summary Judgment, the Defendants argue that they are currently immune from any suit arising from the searches because the law governing body cavity searches of prisoners was not clearly established at the time of the searches. Since the issue presented in the Defendants' Motion is purely a question of law, there is presently no need to delve into the factual particularities involved in the case.[2]

## ANALYSIS

Prison officials enjoy a qualified immunity from liability arising from their official

L.Ed.2d 411 (1985). The Defendants' Reply Memorandum argues that even if the Plaintiffs' rights were clearly established at the time of the search, certain Defendants who did not actually participate in the searches are nonetheless not liable because the doctrine of *respondeat superior* is not applicable to claims arising under 42 U.S.C. § 1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, since this argument was not presented initially in their Motion for Summary Judgment and is extraneous to the question of qualified immunity, the Court will not presently consider this contention.

conduct, unless such conduct is in violation of a clearly established law of which the officials were reasonably aware.[3] *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). As the United States Supreme Court stated in *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions are shielded in their liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). Accordingly, the Defendants argue that since there were no clearly established standards governing the search of prisoners at the time the searches presently at issue were conducted, they are immune from any suit resulting from the searches.

The Plaintiffs have challenged the constitutionality of the searches at their inception and the manner in which the searches were actually conducted. Each issue will be examined in turn.

## A. The Right to Search

The Defendants argue that neither the Ninth Circuit nor the United States Supreme Court "has ever declared ... that probable cause or any lesser degree of cause is a constitutionally required predicate" for digital cavity searches.[4] Perusal of the case law in this area, however, indicates the contrary. For example, in *Bell v.*

*Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), pretrial detainees challenged the constitutionality of visual body cavity searches on fourth amendment grounds.[5] In upholding the constitutionality of the searches, the Supreme Court explicitly limited its holding to the question of whether visual cavity searches could be *"ever* be conducted on less than probable cause." *Id.* at 560, 99 S.Ct. at 1885 (emphasis in the original).[6] Thus, while the Supreme Court ruled that visual body cavity searches can sometimes be conducted on less than probable cause, it is clear from the opinion that prison official require *some* measure of cause to conduct such searches. As the Court stated in *Bell*, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.... Courts must consider the scope of the particular intrusion ... [and] the justification for initiating it." *Id.* at 559, 99 S.Ct. at 1884. Such a statement would be superfluous if, as the Defendants contend, body cavity searches could be conducted without any reason whatsoever. Hence, at the very minimum, prison official must have reasonable cause to conduct digital body cavity searches.

Moreover, and most significantly, the *Bell* court repeatedly emphasized that the searches were entirely *visual* and involved *no* touching. In the words of the Court:

> If the inmate is a male, he must lift his genitals and bend over to spread his buttocks for visual inspection. The vaginal

---

3. The burden of overcoming an official's qualified immunity by demonstrating the existence of a clearly established right rests with the plaintiff. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984).

4. The Defendants are under the impression that in order for a right to be "clearly established," there must be "a case on point setting forth the precise constitutional right at issue." *Defendants' Reply Memorandum* at p. 4–6. However, there is no "case on point setting forth" this standard as to what actually constitutes "clearly established." To the contrary, it has been specifically held that direct precedent is not required to demonstrate a clearly established right. *See Lynch v. Cannatella*, 810 F.2d 1363, 1375 (CA5 1987).

5. The fourteenth amendment prohibits States from violating a citizen's fourth amendment rights. *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

6. By emphasizing the word "ever," the Supreme Court obviously suggested that in some cases probable cause would be required to conduct even a visual body cavity search. In this regard, it should be noted that the searches in *Bell* were only conducted after contact visits. Thus, the natural implication is that probable cause would be required if the detainee had no recent outside contact. While the searches in the present case did not follow contact visits, this Court does not conclude that probable cause was required to conduct the searches because the Plaintiffs are not mere pretrial detainees.

and anal cavities of female inmates are also visually inspected. The inmate is not touched by security personal at any time during the *visual* search procedure. *Id.* note 39, 558, 99 S.Ct. at 1884 n. 39 (emphasis in the original). Accordingly, if prison official needed some cause, albeit less than probable cause, to conduct a visual body cavity search, it necessarily follows that such officials would also need at least some cause to conduct an exceedingly more intrusive digital body cavity search.

■ *Ward v. San Diego County,* 791 F.2d 1329 (CA9 1986), is also instructive. In *Ward,* the court rejected the defendant's qualified immunity defense and held that a 1981 visual body cavity search of a misdemeanor arrestee conducted in the absence of a reasonable grounds was a violation of clearly established fourth amendment rights. Although *Ward* involved merely a misdemeanor arrestee, in contrast to a prison inmate, the search was also merely a visual inspection. In the present case, while those searched were subjected to a much more severe form of incarceration, they were also subjected to a much more severe form of search. Thus, it follows that the same standard of "reasonable grounds" applies.[7]

■ Accordingly, it is apparent that the decisions of both the United States Supreme Court and the Ninth Circuit clearly established prior to March of 1984 that prison officials needed reasonable grounds to initiate digital body cavity searches of prisoners.[8]

7. This reasoning, of course, is equally applicable to the pretrial detainees in *Bell* and the prisoners in the present controversy.

8. Of course, as already stated, the question of whether the Defendants actually possessed reasonable grounds to search the Plaintiffs is one of fact and is consequently beyond the scope of this Order. The Court will note, however, that the Plaintiffs are incorrect in interpreting the July 1, 1986 Order of this Court to hold that this Court will not consider the information provided to the Defendants by their informant. In determining the reasonableness of the searches, the informant's information will be appraised *in camera.*

### B. The Manner of Search

■ The Plaintiffs also argue that even if the law was unclear as to what standard, if any, governed prison officials' right to initiate the searches, the standards governing the manner in which the searches were actually conducted were clearly established. The Plaintiffs adduce *Bell v. Wolfish,* 441 U.S. at 560, 99 S.Ct. at 1885, in support of their argument. In *Bell,* the Court stated "[n]or do we doubt ...that on occasion a security guard may conduct the search in an abusive fashion. Such an abuse cannot be condoned. The searches must be conducted in a reasonable manner." [Citations omitted.] Obviously, this conclusion is underscored when such searches are digital rather than merely visual. Thus, the unequivocal language of the Supreme Court plainly established prior to searches presently at issue that rectal cavity searches must be reasonably conducted in order to withstand fourth amendment scrutiny.

Moreover, the manner in which the Plaintiffs were searched may have violated clearly established standards of the eighth and fourteenth amendments. For instance, in *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Supreme Court ruled "that deliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'...proscribed by the Eighth Amendment."[9] Since the searches involve a potentially adverse health impact, the Plaintiffs argue their "serious medical needs" have been implicated.[10] The Defendants allegedly conduct-

9. The eighth amendment is made applicable to the States by the fourteenth amendment. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

10. Even aside from the medical implications of the searches, prison officials are also prohibited by the eighth amendment from exhibiting a "deliberate indifference" to the welfare of prisoners. *E.g. Hopowit v. Ray,* 682 F.2d 1237, 1250 (CA9 1982) (deliberate indifference to the "safety needs" of prisoners violated the eighth amendment); *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (grossly inadequate conditions of confinement violate the eighth amendment); *Wright v. Wag-*

ed the searches without initially inquiring whether the searches posed a threat to the health concerns of the particular Plaintiffs. Moreover, the searches were allegedly conducted in an unsanitary, public area by personnel untrained in administering involuntary digital rectal examinations. The Plaintiffs also contend that the examiners failed to even wear gloves on both hands during the searches. Nor did they wash their hands after each examination or permit the Plaintiffs to wash themselves upon being searched. In light of the increasing danger of communicable diseases in prisons, the allegedly unsanitary nature of the searches acquires special significance. Obviously, if proved, these allegations might constitute a deliberate indifference to the medical needs of the Plaintiffs and hence establish violations of the Plaintiffs' clearly established eighth amendment rights.[11]

■ In a similar vein, the fourteenth amendment forbids prison officials from treating inmates in a fashion so "brutal" or "offensive to human dignity" so as to "shock the conscience." *Meredith v. Arizona*, 523 F.2d 481, 483 (1975). While this test is very fact specific in application, the standard itself was well established far in advance of the searches in question. *See Rochin v. California*, 342 U.S. 165, 174, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). Thus, the Defendants were obliged to conduct the searches in a manner that was not brutal, offensive to human dignity, or otherwise shocking to the conscience. The question of whether the Plaintiffs can actually substantiate that the Defendants violated this (or any other) obligation is reserved for a future determination.

## CONCLUSION

Based on the foregoing, this Court concludes that the Plaintiffs have demonstrated the existence of clearly established laws prohibiting the Defendants' alleged conduct. Consequently, the Defendants' claim of qualified immunity fails and their Motion for Summary Judgment on that ground is denied.

---

ner, 641 F.2d 239, 241–42 (CA5 1981) (deliberately indifferent failure to place a self-destructive inmate in padded cell would violate the eighth amendment).

11. While the Defendants are correct in stating that the eighth amendment's "unnecessary and unwanton" standard creates an "onerous burden for the plaintiff to meet" in the context of a prison disturbance, *see Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1089, 89 L.Ed.2d 251 (1986) (Marshall J. dissenting), even assuming a *Whitley* type disturbance existed in the present case, this consideration is irrelevant for purposes of determining whether a qualified immunity applies.