**Sandsbury LEE, Plaintiff–Appellant,**

v.

**Richard L. DUGGER, Defendant–Appellee.**

**No. 88–3956 Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

June 4, 1990.

---

Cecilia Bradley, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, JOHNSON, Circuit Judge and RONEY, Senior Circuit Judge.

PER CURIAM:

Florida prison inmate Sandsbury Lee appeals a summary judgment for Corrections Secretary Richard Dugger in Lee's 42 U.S. C.A. § 1983 suit seeking damages, alleging that he was incarcerated longer than he should have been on a prior sentence because he was not credited with the proper gain-time. We affirm.

Lee was received by the state prison system in April 1981 to serve a 5-year sentence. For a 13-month period between May 1982 and June 1983, Lee was held in "close confinement" and was not awarded gain-time.

In August 1983, Lee wrote to the Department contending that an amendment of the state's gain-time statute, Fla.Stat. § 944.275, required that an additional 130 days of gain-time be deducted from his sentence; 10 days for each of the 13 months of close confinement. The Department responded that Lee was not entitled to an additional sentence reduction because his gain-time had been "withheld" due to "unsatisfactory adjustment" and that the new wording of the statute did not change this.

In determining when an inmate will be released, the Department is required by § 944.275 to set two target dates. The first date is the "maximum sentence expiration date" which is the date when the inmate's full sentence expires, giving credit for any jail time served. The Department is also required to set a "tentative release date" which is computed by deducting gain-time from the maximum expiration date.

According to an affidavit by the Department's Admission and Release Administrator, a computer calculates the "tentative release date" by deducting from the maximum release date all the potential basic gain-time days which could be earned over the entire sentence assuming the prisoner takes advantage of every opportunity to earn gain-time. Thus, in Lee's case, 600 days, which equals 10 days of basic gain-time for each of the 60 months in his 5-year sentence, was subtracted from the maximum release date. When an inmate fails to earn gain-time, the Department adds those days back into the computation, increasing the tentative release date. In Lee's case, 130 days was added back into his sentence for the period when he was held in close confinement.

In March 1984, however, in the first case construing this portion of the new statute, Florida's First District Court of Appeal determined that the Department had no authority to increase the tentative release date by adding days of unearned gain-time.

*Baranko v. Wainwright*, 448 So.2d 1067 (Fla. 1st DCA 1984). The court concluded that unless the time had been "forfeited" through proper statutory procedures, the Department could not increase the tentative release date.

Lee brought this decision to the attention of Department officials, but was apparently told that the case did not apply to him. Lee then filed a habeas corpus petition, to which the Department argued that *Baranko* had been wrongly decided and urged the court to overturn it. The court granted Lee habeas corpus relief and he was released in November 1984. In September 1987, Lee filed this § 1983 action for money damages, contending that he had been incarcerated 12 months past the proper release date.

 Government officials have qualified immunity from suits for damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Here, only one case, decided by an intermediate appellate court, had construed the new statute, which falls short of the clarity of the law required to defeat a defense of qualified immunity. *See Ward v. County of San Diego*, 791 F.2d 1329 (9th Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) (decision of one state court upholding constitutionality of strip search policy not enough to shield officials from liability.) The Department's interpretation of the law was a rea-

sonable one and the Department was entitled to attempt to persuade the same court that its prior decision was in error.

AFFIRMED.

TJOFLAT, Chief Judge, specially concurring:

I concur in the judgment of the court affirming the district court's grant of summary judgment to appellee Dugger, Secretary of the Department of Corrections (Department), on the ground of qualified immunity. I do so because I cannot identify any constitutional violation on which appellant Lee's section 1983 claim for damages could be based. Therefore, I do not see how Dugger could have been on notice that his conduct violated Lee's constitutional rights.

Dugger concedes on appeal that the Department kept Lee in confinement past the date on which he was entitled to be released. Lee thus satisfies three prerequisites of a section 1983 claim:[1] Department officials acted under color of state law; they infringed a liberty interest protected by the fourteenth amendment;[2] and Lee's unauthorized confinement constituted a deprivation of that interest. The fourteenth amendment, however, does not protect against all deprivations of life, liberty, or property; it protects only against deprivations that occur without the due process of law. *See Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695–97, 61 L.Ed.2d 433 (1979).[3] Accordingly, I now consider what process appellant was due.

---

**1.** 42 U.S.C. § 1983 (1982) provides in pertinent part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** The fourteenth amendment to the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."

**3.** Lee may well have a state tort claim for false imprisonment. As the Supreme Court stated in *Baker*, however, a prima facie tort case for false imprisonment does not constitute a fourteenth amendment claim merely because the defendant was a state official: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type must be sought in state court under traditional tort-law principles." 443 U.S. at 146, 99 S.Ct. at 2695–96. *See generally* Smolla, The Displacement of Federal Due Process Claims by State Tort Remedies: Parratt v. Taylor and Logan v. Zimmerman Brush Company, 1982 U.Ill. L.Rev. 831.

Florida law prior to June 6, 1983, provided for judicial review of final agency decisions adversely affecting a party. *See* Fla. Stat. §§ 120.57, .68(1) (1983). Judicial review was instituted by "filing a petition in [a] district court of appeal." *Id.* § 120.68(2). Petitions for an extraordinary writ (habeas corpus or mandamus) filed directly in a district court of appeal served to trigger review when a party was kept in confinement due to an adverse agency decision. *See, e.g., Ellis v. Wainwright,* 428 So.2d 785, 786 (Fla.Dist.Ct.App.1983); *Morris v. Wainwright,* 409 So.2d 1161, 1162 (Fla.Dist.Ct.App.1982); *Holman v. Florida Parole & Probation Comm'n,* 407 So.2d 638, 638–39 (Fla.Dist.Ct.App.1981); *Wright v. Wainwright,* 359 So.2d 11, 11–12 (Fla. Dist.Ct.App.1978); *cf. Florida Dep't of Rehab. v. Jerry,* 353 So.2d 1230, 1233–34 (Fla. Dist.Ct.App.1978) (discussing applicability of Administrative Procedure Act to prison disciplinary proceedings), *cert. denied,* 359 So.2d 1215 (Fla.1978), *overruled on other grounds, Florida Home Builders Ass'n v. Department of Labor & Employment Sec.,* 412 So.2d 351, 354 (Fla.1982). The Florida statutory model thus provided for judicial review, upon petition by the adversely affected party, of the Department's decision to deny gain-time. Such review was simply the final stage in the decision-making process established by the legislature for consideration of a prisoner's request for release.

On June 6, 1983, the legislature eliminated the appellate courts' jurisdiction to entertain direct appeals, by adversely affected prisoners, of most agency actions. *See* 1983 Fla.Laws ch. 83–78, §§ 1, 4; *see also Thomas v. Florida Parole & Probation Comm'n,* 436 So.2d 349 (Fla.Dist.Ct.App. 1983); *Hansen v. Florida Parole & Probation Comm'n,* 436 So.2d 349–50 (Fla.Dist. Ct.App.1983). Prisoners could, however, continue to seek judicial review directly from the district court of appeal, pursuant to section 120.68, of agency proceedings that involved the adoption or the validity of an agency rule. *See id.* § 1; Fla.Stat. §§ 120.54(3)–.54(5), .54(9), .56 (1983). Although they could no longer file directly for appellate review of other agency ac-

tions, aggrieved prisoners could nonetheless seek to remedy an adverse decision by filing a petition for an extraordinary writ in the circuit court. *See Hall v. Wainwright,* 498 So.2d 670 (Fla.Dist.Ct.App. 1986); *Hansen,* 436 So.2d at 349–50.

In *Baranko v. Wainwright,* 448 So.2d 1067 (Fla.Dist.Ct.App.1984), upon which Lee relies, the basis of the court's jurisdiction is not identified. The petition for writ of habeas corpus appears to have been filed directly in the district court of appeal, however, rather than in the circuit court (a court of first instance), and the three-judge *Baranko* court reached its decision after reviewing a record from below. *See id.* at 1068–69. These facts indicate that the *Baranko* court sat as an appellate body from which judicial review of an administrative agency decision could be obtained directly, in accordance with section 120.68. Similarly, although the record on appeal does not set forth all of the steps taken by Lee in obtaining his release, Lee's complaint states that he filed a petition for writ of habeas corpus directly with the district court of appeal. This indicates that, as in *Baranko,* the court that granted Lee's petition and issued the writ sat in its capacity to review the Department's decision.

Regardless of the basis of the court's jurisdiction, then, Lee has received precisely the process due him under the Florida scheme. Because of its mistaken interpretation of a newly amended Florida statute as not applying in Lee's case, Department officials who considered his request for release denied him a full hearing and kept him too long in confinement. The Department's error, however, was then corrected in the manner provided by Florida law: Lee petitioned for a writ of habeas corpus in the district court of appeal; that court reviewed the Department's decision and ordered Lee's release. Lee received the relief he sought, and he received it by invoking procedures available to him under Florida law. If Lee's claim is that his right to due process was violated by a state scheme that required him to petition for a writ of habeas corpus in order to rectify a mistaken decision of the Department, I am not

persuaded. If Lee's argument is that a mistake, made by a Department official somewhere on the decision-making ladder and corrected pursuant to established procedures at a succeeding level, subjects the mistaken official to liability under section 1983, I am still less persuaded.

Finally, I find no other constitutional violation on which Lee could base a section 1983 claim. I join the court, therefore, in affirming the judgment below on the ground that the appellee has qualified immunity, i.e., nothing in the law placed him on notice that his allegedly unlawful conduct violated any of appellant's constitutional rights.[4]

JOHNSON, Circuit Judge, dissenting:

This appeal arises from an order granting summary judgment on qualified immunity grounds in favor of the defendant, the Secretary of the Florida Department of Corrections, in an individual-capacity damages suit brought under 42 U.S.C.A. § 1983 by a state prison inmate who claims the Secretary unlawfully refused to deduct "gain-time"[1] from a prior sentence, thus prolonging his previous imprisonment. The majority affirms on the ground that Lee's right to the disputed gain-time was not "clearly established" when this occurred. Because the Secretary is not entitled to qualified immunity on the facts of this case, I respectfully dissent.

**4.** I also agree with the court that *Baranko* did not clearly establish the law controlling Lee's case. *Baranko* is a confusing case, but I read it as holding specifically that a "forfeiture" of the right to earn gain-time (as well as a forfeiture of gain-time earned) can only be declared pursuant to established procedures. *See Baranko*, 448 So.2d at 1069. Since *Baranko* involved only an alleged forfeiture of the right to earn gain-time, its additional commentary on the need for the fuller procedures when gain-time is withheld, as a result of a prisoner's failure to comply with the statutory prerequisites previously in effect, is dicta. *See id.* Indeed, in light of *Baranko's* explicit distinction between "forfeiture" and "failure to comply with statutory prerequisites," *see id.*, the Department acted reasonably when it explained, in response to Lee's request for release, that his gain-time had been withheld and not forfeited.

## DISCUSSION

### A. *Introduction*

The district court's grant of summary judgment based on the doctrine of qualified immunity is a conclusion of law subject to *de novo* review. *Rich v. Dollar*, 841 F.2d 1558, 1561 (11th Cir.1988). The Secretary is entitled to immunity if his "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985). The narrow issue presented in this appeal is whether a reasonable official in March 1984, in the same position and with the same knowledge as the Secretary, would have concluded that denying Lee his claimed gain-time under the circumstances of this case violated Lee's Fourteenth Amendment due process rights.

### B. *Lee's Gain–Time Rights*

Florida law provides for granting and revoking gain-time according to specified standards and procedures. *See* Fla.Stat. Ann. §§ 944.275 and 944.28 (West 1985 & Supp.1989). These provisions were construed in March 1984 in *Baranko v. Wainwright*, 448 So.2d 1067 (Fla.Dist.Ct.App. 1984), a case with facts remarkably similar to Lee's. In *Baranko*, a prisoner had been denied gain-time for 31 months during

Finally, I would note that, to the extent that Lee's suit for damages is brought against Dugger in his official capacity, the federal courts may lack jurisdiction to entertain it in light of a recent Supreme Court pronouncement. In *Will v. Michigan Dep't of State Police*, — U.S. —, —, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989), the Court declared that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" and state "officials acting in their official capacities" are not "persons" for the purpose of a section 1983 damages suit.

**1.** This is often referred to as "good-time" in other prison systems and indicates days deducted from a prisoner's sentence for each month he remains in conformance with prison rules.

which he was in close confinement,[2] as authorized under the existing version of section 944.275. Effective June 15, 1983, however, section 944.275 was revised to require a hearing for all denials of gain-time,[3] and *Baranko* applied the new law retroactively to 1978.[4] *Baranko* held that gain-time could be lost only through "forfeiture" accompanied by a hearing,[5] and that gain-time withheld under the old scheme without a forfeiture hearing had to be restored. *See Baranko,* 448 So.2d at 1069.[6]

Under Florida law, then, at least by March 1984, Lee clearly had a liberty interest in his gain-time protected by the Fourteenth Amendment. *See Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) ("the State having created the right to good time and ... recogniz[ed] that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and ... entitle[s] him to those minimum procedures ... required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated"); *see also Hewitt v. Helms,* 459 U.S. 460, 466, 471–72, 103 S.Ct. 864, 868, 871–72, 74 L.Ed.2d 675 (1983); *Vitek v. Jones,* 445 U.S. 480, 488–89, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980). *Baranko's* retroactive application of section 944.28's stringent procedural guarantees relating to gain-time establishes Lee's liberty interest beyond any doubt. *See Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871 (relevant to establishing liberty interest that state law "has used language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed").

The inquiry next turns to what process is due under the Fourteenth Amendment regarding deprivation of Lee's liberty interest. This is a federal question resolved independently of the procedures provided by the state. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 539–41, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985). It is not necessarily sufficient for a state to follow its own established procedures. *See Vitek,* 445 U.S. at 490–91, 100 S.Ct. at 1262–63; *Wolff,* 418 U.S. at 560, 94 S.Ct. at 2976. In depriving an inmate of gain-time, the due process clause requires at least written notice of claimed rule violations, written findings, and some opportunity for the inmate to offer evidence and witnesses on his behalf. *Wolff,* 418 U.S. at 563–67, 94 S.Ct. at 2978–80.

In this case, the Secretary does not dispute that Lee was completely denied his state-law rights as construed by *Baranko.* It appears that Lee was denied *any* hearing or procedural rights regarding the deprivation of his gain-time.[7] Thus, the only difficult issue in this case is whether *Baranko,* upon which Lee's liberty interest primarily rests, was clearly established law in March 1984 when the Secretary allegedly refused to deduct the disputed gain-time.[8]

---

**2.** Lee was denied gain-time for 13 months during which he was in close confinement.

**3.** 1983 Fla.Laws c. 83–131, §§ 8, 43. Based on the record, construing it in Lee's favor on this summary judgment appeal, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), it appears that no hearing or other procedural mechanism attended the "withholding" of gain-time under the old version of section 944.275, in force while both Lee and Baranko were in close confinement. However, the law did provide that "[t]he department shall grant ... deductions for gain-time on a monthly basis, as earned, from the sentence of every prisoner who has committed no infraction of the rules ... and who has performed in a satisfactory and acceptable manner the work, duties, and tasks assigned." Fla.Stat.Ann. § 944.275(1) (West 1985) (pre–1983 version reprinted in historical note).

**4.** The new law applies "to all sentences imposed for offenses committed on or after July 1, 1978." Fla.Stat.Ann. § 944.275(6)(a) (West 1985 & Supp.1989).

**5.** Both before and since the 1983 revision, section 944.28 has imposed a hearing requirement on all "forfeitures."

**6.** No subsequent case has overruled or modified *Baranko,* and it remains today the sole authoritative statement of Florida law on this point.

**7.** *See* footnote 3 *supra.*

**8.** Lee had originally requested deduction of the disputed gain-time in August 1983, following the revision of section 944.275, and renewed his request immediately after *Baranko.*

If this is found to be so, it clearly follows under the circumstances of this case that such refusal deprived Lee of liberty without due process of law.

### C. *The Qualified Immunity Analysis*

To show that the law is "clearly established" under qualified immunity analysis, it is not enough to assert the violation of a broad or abstract right. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Rather, in the "particularized" context of the case, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039; *see also Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir.1989); *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1322–23 (11th Cir.1989). *Anderson* requires an "objective (albeit fact-specific)" analysis "in light of clearly established law and the information the ... officers possessed." 483 U.S. at 641, 107 S.Ct. at 3040; *see also Clark v. Evans*, 840 F.2d 876, 881 (11th Cir.1988).

*Baranko* was indisputably "clearly established law" for *Anderson* purposes. It established a highly specific rule of law on facts virtually identical to Lee's case: A Florida prisoner is entitled to gain-time, even for months spent in close confinement, unless that gain-time was denied by a section 944.28 forfeiture hearing. The Secretary, unable to assert any ambiguity or vagueness in this rule's application to Lee, urges that "one case in a district court of appeal ... does not clearly establish the

law." The majority agrees, relying on *Ward v. County of San Diego*, 791 F.2d 1329 (9th Cir.1986), *cert. denied sub nom. Duffy v. Ward*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). *Ward*, however, *denied Harlow* immunity to an official who cited a single state decision *supporting* the lawfulness of his conduct. *See id.* at 1333. Thus, *Ward* held that the law may condemn official conduct with sufficient clarity even when one precedent arguably *vindicates* that conduct. Lee claims, more modestly, that the law is clearly established when the sole authoritative construction of the relevant law by a court in the controlling jurisdiction clearly *prohibits* such conduct.[9] No precedent appears to support the Secretary's position that the law is not "clearly established" for qualified immunity purposes simply because the relevant case was decided recently by an intermediate court.

It is apparent from the record that Florida corrections officials, far from being confused by *Baranko*, understood it all too well and simply disagreed with it.[10] They responded to Lee's habeas petition in the Florida District Court of Appeal by unsuccessfully urging that court to reconsider its *Baranko* decision, arguing that it conflicted with the legislative intent behind the gain-time revisions.[11] The majority holds that "the Department was entitled to attempt to persuade the same court that its prior decision was in error." The issue under *Harlow*, however, is whether it was *objectively* reasonable not to recognize Lee's claimed rights following *Baranko*.[12]

---

**9.** Furthermore, *Ward* conflicts with this Court's decision in *Barts v. Joyner*, 865 F.2d 1187, 1193–94, *reh'g denied*, 871 F.2d 122 (11th Cir.1989), which held that even a single judicial ruling upholding official conduct could be decisively relevant in supporting qualified immunity. In this case, of course, there was no conflict or ambiguity among courts, but rather a single, authoritative, controlling decision on a narrow, fact-specific point of law.

**10.** Officials apparently informed Lee that *Baranko* did not affect him because it was not a class action. Needless to say, a rule of law need not strictly bind a party to a case in order to be "clearly established" for purposes of qualified immunity. *See Anderson*, 483 U.S. at 640, 107

S.Ct. at 3040 ("[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful").

**11.** The Deputy Secretary of the Department had helped draft the new gain-time legislation. Whatever the merits of this issue may be, the parties agree that the state habeas court followed *Baranko* in an unreported decision and ordered Lee's release in November 1984.

**12.** The undisputed evidence of the officials' conduct is not offered to suggest any subjective bad faith on their part. Such an inquiry would be inappropriate under *Harlow*, which held that "[i]f the law at that time was not clearly estab-

The officials' conduct merely reinforces the objective conclusion that the law was "clearly established," although not to their liking, as of March 1984. The fact that state officials may wish to follow a policy of nonacquiescence toward a court decision with which they disagree, in the hope of obtaining a change in the law, cannot cloak them with immunity under *Harlow*.[13]

## CONCLUSION

Lee's right to the gain-time deduction was clearly established in March 1984. Therefore, the Secretary is not entitled to qualified immunity on this claim. I would reverse the grant of summary judgment and remand the case to the district court.

lished, an official could not ... fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed." 457 U.S. at 818, 102 S.Ct. at 2738. For purposes of *Harlow* analysis, it can be assumed that the Florida officials believed, in subjective good faith, that they might be able to persuade the Florida court to reverse itself.

13. The Secretary continues to argue before this Court that *Baranko* erred in construing "a retroactive application of the statute ... in total conflict with the departmental and legislative intent." Even if *Baranko* were in error, of course, it is not our province to correct the Florida courts on a matter of Florida law.