**Adam Danny THOMAS, Plaintiff,**

v.

**John JABE, Arthur W. Barber, Frederick E. Neubecker, Gregory L. Mohon, and Roger D. Becker, Defendants.**

No. 88–72130.

United States District Court, E.D. Michigan, S.D.

Feb. 1, 1991.

Nkrumah Johnson, Detroit, Mich., for plaintiff.

Richard M.C. Adams, Asst. Atty. Gen., Lansing, Mich., for defendants.

MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a prisoner civil rights case. 42 U.S.C. § 1983. Plaintiff Adam Danny Thomas (Thomas) was confined at the State Prison of Southern Michigan (SPSM) in Jackson, when defendants allegedly engaged in a series of actions violating the constitutional guarantee of due process and the Eighth Amendment's prohibition against cruel and unusual punishment. Thomas's complaint arises out of events that took place in December 1987 and January 1988. Specifically, he avers that he was denied showers and yard privileges and fed still-frozen food that made him ill. He also says that he was placed in a quiet cell in a manner that violated due process; that he was forced to undress in front of and be videotaped by a female guard; and that he was then denied clothing and forced to remain naked in the quiet cell even after the cell was flooded with water and human waste. Thomas also claims that, while he was in the quiet cell, his personal property, including legal papers associated with the appeal of his underlying conviction, was destroyed without due process in order to deny him access to the court system. Finally, Thomas alleges that defendants engaged in a conspiracy to deny him of his civil rights in violation of 42 U.S.C. § 1985(3).

On February 1, 1989, defendants filed a motion for summary judgment. Thomas responded on February 17, 1989. On July 14, 1989, Thomas moved for the appointment of counsel. Appointed counsel filed a response on behalf of Thomas on January 29, 1990. The matter was referred to a magistrate who, on November 21, 1990, issued a report recommending that the Court grant defendants' motion. Thomas has objected to the magistrate's report and recommendation. Because the Court finds merit in the objections, it rejects the report and recommendation. Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

### II.

The following facts are undisputed. During the relevant time period, Thomas was confined in administrative segregation (5 block) at SPSM. Defendant John Jabe (Jabe) is the warden at SPSM. On December 27, 1987, a guard at SPSM was murdered while on duty. As a result, SPSM staff took precautionary measures in 5 block, reducing unnecessary prisoner movement. The precautions included providing the prisoners with substitute meals (cold sandwiches) from December 27, 1987 through January 4, 1988. On January 13, 1988, an officer was stabbed while on duty in 5 block. Substitute meals were reinstated during the period from January 13, 1988 to January 17, 1988. Thomas brings claims against Jabe because some of the sandwiches, meat, milk, and fruit given to him to eat were allegedly still frozen. He also says that eating the frozen food gave him stomach cramps for which he was forced to seek medical attention.

On December 31, 1987, Thomas received a major misconduct ticket for allegedly throwing a carton of milk at a guard. Ultimately, after a hearing, Thomas was cleared of any wrongdoing related to the incident. However, as a result of the alleged assault on the guard, Thomas was moved to a quiet cell by defendants Arthur W. Barber (Barber) and Frederick E. Neubecker (Neubecker). The officers were acting pursuant to a memorandum issued on December 29, 1987 by deputy wardens Jerry Hofbauer and Wayne Jackson in an effort to curb administrative segregation prisoner assaults on staff. The memorandum provided that prisoners in administration who were *observed* by staff throwing anything on staff would be removed from their cells.

Although no staff actually observed Thomas throwing anything, he was placed in a quiet cell. There, Barber and Neubecker forced him to undress in front of female officer Pam Cotton who was videotaping the incident. After he had undressed, his clothes were taken from him, in accordance with Michigan Department of Corrections (MDOC) procedure OP–SMM–

60.09. However, nothing in the record suggests that Thomas received a clean issue of clothing as required by OP–SMM–60.09. Thomas alleges that he was forced to remain naked in the quiet cell for over 19 hours.

In addition, on December 31, 1987, at 11:56 AM, all water in 5 block was shut off due to flooding in the east side of the block. The water was turned back on at 7:40 PM. Because of the flooding, all rounds—required checks on the prisoners confined in the quiet cell area each half hour—were suspended until 2:01 PM. The flooding left the quiet cell where Thomas was confined filled with a substantial amount of water and human waste. Roger D. Becker (Becker) saw that Thomas's cell was filled with water, trash, and human waste, but he refused to clean the cell, sweeping only the area outside the cell.

Thomas was placed in the quiet cell at 4:33 PM. Rounds were made at half hour intervals between 4:33 PM and 7:01 PM. The record of those rounds gives no indication of disruptive behavior by Thomas. Procedure OP–SMM–60.09 requires that a prisoner be removed from a quiet cell after remaining calm for two consecutive hours. At 7:01 PM, the guards' log describes Thomas as "being disruptive." At 9:01 PM, he is described as still being disruptive. The record contains no other evidence of disruptive behavior by Thomas while confined in the quiet cell. Gregory L. Mohon (Mohon) reported to work on the morning of January 1, 1988 and found Thomas in the quiet cell. After Mohon's arrival, Thomas was kept in the quiet cell for another six hours despite the fact that, according to the record before the Court, there was no report of his being disruptive.

### III.

Thomas raises several specific objections to the magistrate's report. However, the objections do not pertain to all of the claims on which the magistrate recommended granting summary judgment; as a result, Thomas has waived his right to object to certain portions of the magistrate's report. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct.

466, 88 L.Ed.2d 435 (1985). The Court's analysis of Thomas's objections follows.

### A.

■ Thomas argues that the magistrate's report fails to address several of the claims raised in his complaint. For example, the magistrate determined that the defendants Barber, Neubecker, and Mohon, properly kept Thomas in quiet cell detention because he engaged in disruptive behavior after his placement there. In doing so, the magistrate neglected Thomas's claims that his placement in a quiet cell was not required by the policy articulated in the memorandum of December 29, 1987 and that he was detained in a quiet cell for more than two hours despite the absence of documented disruptive behavior in violation of MDOC procedure OP–SMM–60.09. Indeed, these issues were not addressed in defendants' motion for summary judgment, either. As a result, while the Court recognizes that state statutes and prison regulations can create protected liberty interests subject to due process guarantees, *see Hewitt v. Helms*, 459 U.S. 460, 470, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983), these issues simply have not been raised. Summary judgment is DENIED.

### B.

#### 1.

■ Thomas also objects to the magistrate's disposition of his Eighth Amendment claims. First, he argues that the magistrate failed to address his alleged deprivation of clothing while being held in the quiet cell. The Court agrees. The magistrate correctly stated that MDOC procedure OP–SMM–60.09 provides that a prisoner's clothes are to be removed when he is placed in a quiet cell but failed to note that the clothes are to be removed so that the prisoner can be given a clean issue of clothing. Nothing in the regulations permits removal of clothing in order to force a prisoner to stand naked in the quiet cell. Summary judgment as to this claim is DENIED.

## 2.

██ Thomas also contends that the magistrate erred in determining that his Eighth Amendment rights were not violated when he was forced to stay in a cell that was flooded with water and human waste. The magistrate's determination was based on the fact that the leak that caused the flooding was unintentional. From this fact, the magistrate concluded that Thomas's placement in a flooded cell was merely negligent and not actionable. The magistrate's conclusion is untenable.

Defendants have conceded that they knew about the water leak and subsequent flooding well in advance of Thomas's placement in a quiet cell. Furthermore, it should have been obvious to Barber and Neubecker, at the time that they placed Thomas in the cell, and to Becker as he swept the area outside the cell, that it was flooded and unsuitable for occupation. The record contains no evidence that the cell was not flooded, that Thomas's placement in the flooded cell was inadvertent, or that exigent circumstances necessitated his placement in a flooded cell. Therefore, summary judgment as to this issue is DENIED.

## 3.

██ Next, Thomas asserts that his privacy rights were violated when a female guard videotaped him undressing. The magistrate stated that a male prisoner's privacy rights are violated only when he is viewed without clothing by guards of the opposite sex on a regular basis. Because the videotaping represented only one incident, the magistrate determined that Thomas could not make out an Eighth Amendment claim. Appropriate treatment of this issue requires a more subtle analysis.

Courts discussing this type of privacy right have looked to whether the viewing of unclothed male prisoners by female guards occurred on a regular basis as a means of assessing whether the viewings were intentional and, therefore, designed to humiliate or degrade the prisoners involved. *See, e.g., Grummett v. Rushen,* 779 F.2d 491, 494–95 (9th Cir.1985); *Smith v. Chrans,* 629 F.Supp. 606, 611 (C.D.Ill.

1986); *Miles v. Bell,* 621 F.Supp. 51, 66–67 (D.Conn.1985). Although Thomas's complaint describes only one incident, it cannot be said that the viewing was not intended to be humiliating or degrading to him solely because it happened once. The Court is satisfied that it is standard procedure to videotape the placement of prisoners in quiet cell detention, OP–SMM–60.09, and that prison officials have a legitimate interest in doing so. However, there has been no showing here that circumstances required that a female guard conduct the videotaping. Furthermore, given the totality of the circumstances alleged in Thomas's complaint and the defendants' failure to counter many of Thomas's assertions of mistreatment, a reasonable jury could find that he was intentionally videotaped in a humiliating or degrading manner. Summary judgment as to this issue is DENIED.

## 4.

██ Finally, Thomas says that the magistrate did not properly address his claim that he was given inedible food to eat in violation of the Eighth Amendment. In moving for summary judgment, defendants argued that a prisoner is not entitled to gourmet meals and that unless the meals constitute malnourishment or a health hazard, they cannot be the basis of a § 1983 claim. The magistrate essentially accepted this position, despite the fact that Thomas alleges that eating the still-frozen food made him sick. The Court agrees. Because nothing in the record currently before the Court suggests that Jabe intended that SPSM personnel serve prisoners in 5 block, and Thomas in particular, still-frozen food, summary judgment as to this issue is GRANTED.

## 5.

██ Thomas also argues that administrative rules governing SPSM require that prisoners in segregation receive three meals a day served from the menu for general population prisoners. *See* Mich. Admin.Code r. 791.5510(2)(f) (1990). However, the requirement can be abated by a statement in writing by a deputy warden stating that substitute meals are required

**124**

for security reasons. *Id.* While defendants have not produced such a writing, the parties do not dispute that the substitute meals were provided as security measures following the murder of a guard in 5 block at SPSM. Therefore, the act of serving substitute meals in and of itself is not actionable. Summary judgment as to this issue is GRANTED.

### IV.

Based on the foregoing analysis, the defendants remaining in this case are Barber, Neubecker, Mohon, and Becker. The claims surviving the motion for summary judgment are as follows. Barber and Neubecker are alleged to be responsible for Thomas's improper placement and detention in a quiet cell in violation of his due process rights. Mohon is alleged to have continued to improperly detain Thomas in the quiet cell the following morning. Barber and Neubecker also are alleged to have violated Thomas's Eighth Amendment rights by forcing him to undress in front of and be videotaped by a female guard and by leaving him naked in a cell flooded with water and human waste. Becker is alleged to have contributed to the Eighth Amendment violations by cleaning up the area around Thomas's cell but refusing to clean up the cell itself.

SO ORDERED.