**Tracy Ray VAUGHAN, et al.,
Plaintiffs–Appellees,**

v.

**James D. RICKETTS, et al.,
Defendants–Appellants.**

**No. 87–2526.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1988.

Decided Oct. 14, 1988.

---

Ronald J. Greenhalgh, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellants.

Robert Bartels and Cindra White, Arizona State University Law School Clinic, Tempe, Ariz., for plaintiffs-appellees.

Before HUG* and BOOCHEVER, Circuit Judges, and STEPHENS,** District Judge.

BOOCHEVER, Circuit Judge:

Ricketts, the director of the Arizona Department of Corrections, and other prison officials (Ricketts) appeal the district court's denial of their summary judgment motion. Ricketts contends that he is entitled to qualified immunity from suit under 42 U.S.C. § 1983 by Vaughan and other plaintiffs (Vaughan), all inmates at the Arizona State Prison at Florence (ASP), alleging that a series of digital rectal cavity searches violated their constitutional rights. Ricketts also suggests that the individual liability of particular defendants is before the court on this appeal. We find that the district court did not err in denying Ricketts' claim of qualified immunity. The denial of summary judgment is AFFIRMED.

## FACTS

Vaughan and approximately eighty inmates of the maximum security unit at ASP were subjected to a series of digital rectal cavity searches on the 15th, 22nd, and 23rd of March 1984. Vaughan alleges that correctional medical assistants untrained in involuntary rectal cavity searches conducted them on a table in an open hallway, within view of prison personnel and some inmates. He alleges that the conditions were unsanitary, that some inmates who resisted were forced to submit, and that those searching made no effort to determine whether any of the inmates had medical conditions that would make a digital rectal cavity probe medically inadvisable. Ricketts had ordered the searches in response to information that there were explosives in the maximum security unit; the March 15 searches recovered some gunpowder.

Vaughan filed suit under 42 U.S.C. § 1983 alleging deprivation of rights under the fourth, eighth, and fourteenth amendments of the United States Constitution. Ricketts moved for summary judgment, claiming a qualified immunity from suit because the law governing body cavity searches of inmates was not clearly established as of March 1984. In its order denying Ricketts' motion, the district court held that Supreme Court and Ninth Circuit decisions before March 1984 clearly established a "reasonable grounds" standard for initiation of digital body cavity searches of inmates. The court concluded that it was also clearly established that body cavity searches must be "reasonably conducted in order to withstand fourth amendment scrutiny." Finally, the district court found that clearly established standards existed under the eighth and fourteenth amendments as well. The court thus refused to grant Ricketts qualified immunity on any of Vaughan's claims.

## ANALYSIS

■ We generally do not permit appeals from denials of summary judgment. The

---

* Judge Hug was drawn to replace Judge Anderson.

** Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

Supreme Court has held, however, that an interlocutory order denying qualified immunity is effectively unreviewable on appeal from final judgment, conclusively determines the issue in dispute, and is conceptually separate from the merits of the plaintiff's claim. *Mitchell v. Forsyth,* 472 U.S. 511, 526–28, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985). "[T]o the extent that it turns on an issue of law," such an order is immediately appealable. *Id.* at 530, 105 S.Ct. at 2817. Assuming that Vaughan can prove the acts attributed to Ricketts, we must decide the entirely legal issue of "whether the facts alleged ... support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9.

■ Government officials performing discretionary functions enjoy a qualified immunity from liability for civil damages so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The *Harlow* test focuses upon the "objective reasonableness" of the official's conduct. *Id.* Ricketts is entitled to summary judgment granting him qualified immunity if he can establish that "a reasonable officer could have believed that the search comported with [the Constitution] even though it actually did not." *Anderson v. Creighton,* — U.S. ——, 107 S.Ct. 3034, 3036, 97 L.Ed.2d 523 (1987). For a finding that the right was "clearly established" at the time the action was taken, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* 107 S.Ct. at 3039.

### FOURTH AMENDMENT

■ To determine whether, at the time of the searches in March 1984, Vaughan enjoyed "clearly established ... constitutional [fourth amendment] rights of which a reasonable person would have known," *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, we must review "all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established." *Ward v. County of San Diego,* 791 F.2d 1329, 1332 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

■ Ricketts asserts that it was not clearly established that prisoners retain any fourth amendment rights. We disagree. By 1982, the majority of the circuits had considered the question, each holding that inmates retained some fourth amendment protection from unreasonable searches of their persons. *See Bonitz v. Fair,* 804 F.2d 164, 171 (1st Cir.1986) (citing opinions from the First, Second, Fourth, Fifth, Seventh, Eighth, Ninth, and Tenth circuits). In *United States v. Savage,* 482 F.2d 1371, 1372 (9th Cir.1973), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974), this court held that "[a] prisoner is entitled to the fourth amendment's protection from unreasonable searches and seizures." That "abstract right[ ]" in itself, however, is not enough to show that the law was clearly established in this case; the law regarding body cavity searches of inmates in 1984 must be so clear that "the unlawfulness [of the officials' conduct is] apparent" to the reasonable official. *Anderson,* 107 S.Ct. at 3039.

■ In 1979, the Supreme Court held in *Bell v. Wolfish* that routine visual body cavity inspections of pretrial detainees must be reasonable under the fourth amendment. 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). A determination of whether a challenged search is reasonable

> requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884.

In *Ward,* this court held that *Wolfish* clearly established as of 1981 that the justi-

fication for initiating blanket strip searches of minor offense arrestees must be "reasonable." 791 F.2d at 1332–33. The district court in this case relied on *Ward* to find that the same standard of "reasonable grounds" was clearly established as regarded digital rectal cavity searches of inmates. Although the information regarding the presence of explosives in the maximum security unit of the ASP may have provided reasonable cause for the searches, we find it unnecessary to resolve whether it was clearly established that prison officials must have reasonable cause for such a search or whether such cause existed here. Regardless of the strength of the officials' justification, the *manner* in which Vaughan alleges the searches were conducted violated clearly established standards. A refusal to grant qualified immunity on the fourth amendment claim was appropriate on that ground alone.

The Supreme Court in 1979 emphasized that any consideration of whether routine visual body cavity searches of inmates were reasonable involved an assessment of the manner in which the searches were conducted. *Wolfish*, 441 U.S. at 559, 99 S.Ct. at 1884–85. In finding the search before it was reasonable, the Court pointed out that no touching was involved. *Id.* at 558 n. 39, 99 S.Ct. at 1884. The Court elaborated:

> We do not underestimate the degree to which these [visual] searches may invade the personal privacy of inmates. Nor do we doubt ... that on occasion a security guard may conduct the search in an abusive fashion. Such an abuse cannot be condoned. The searches must be conducted in a reasonable manner.

*Id.* at 560, 99 S.Ct. at 1885 (citations omitted).

Courts of appeals finding body cavity searches constitutional before the ASP searches in 1984 were careful to note that the manner in which the searches were conducted was reasonable. *Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973), held that routine physical rectal searches of inmates before court

appearances were reasonable "unless contradicted by a showing of wanton conduct." The court continued:

> Of course, any search should be conducted by prison officials under judicious circumstances .... The searches were here conducted according to the directives issued by the Bureau of Prisons ... and the examinations were carried out by *trained para-professional medical assistants in a designated area and under sanitary conditions. Also, there was no attempt on the part of officials or medical personnel to humiliate or degrade the appellants.*

*Id.* at 295 (citations omitted) (emphasis added). In *United States v. Lilly*, 576 F.2d 1240, 1246 (5th Cir.1978), the court required that body cavity "search[es] and any consequent seizure [must be] conducted in a reasonable manner." *Lilly* upheld the constitutionality of a body cavity search of a female inmate where the "search was conducted by a female medical officer in the prison clinic in the presence of only the medical officer and a female correctional officer." *Id.* at 1247.

The Sixth Circuit in 1983 found the strip search of a felony arrestee proper under *Wolfish* where the search was visual only, conducted in private by a same-sex attendant, and there was "no claim of offensive behavior ... beyond that inherent in the nature of the inspection itself." *Dufrin v. Spreen*, 712 F.2d 1084, 1087 (6th Cir.1983).

In a case involving qualified immunity issues similar to those presented here, the First Circuit found that in light of the law prevailing in 1981, inmates had a clearly established fourth amendment right to be free from a body-cavity search conducted in an unreasonable manner. *Bonitz v. Fair*, 804 F.2d 164, 173 (1st Cir.1986). The court emphasized that facts alleged by the female inmates made the search unreasonable under the then-prevailing case law: The physical body cavity searches involved touching by police officers, not medical personnel, who did not change gloves between searches, and male officers peered through doors to observe the searches. *Id.* at 169, 172.

We hold that it was clearly established by 1984 that body cavity searches of inmates must be conducted in a reasonable manner, and that issues of privacy, hygiene, and the training of those conducting the searches are relevant to determining whether the manner of search was reasonable. It was also clear that the place in which the search was conducted must be considered in judging the search's reasonableness. *Wolfish*, 441 U.S. at 559, 99 S.Ct. at 1884–85. We now address the "fact-specific" question whether Ricketts could have believed the March 1984 searches "to be lawful, in light of clearly established law." *Anderson*, 107 S.Ct. at 3040.

Vaughan alleges he was searched on a table in an open hallway, by medical assistants untrained in involuntary body cavity searches. The table was not sanitary, and the medical assistants did not wash their hands between searches. The area was clearly visible to other inmates and prison personnel, and some personnel made jokes and insulting comments. No official made an inspection of medical records to ensure that individual inmates did not have medical conditions that made the searches dangerous. Inmates who resisted were forced to submit. At least one inmate search repeated later in the medical unit was visible to female personnel. No reasonable officer could believe that such searches were conducted in a reasonable manner, and so Ricketts was not entitled to qualified immunity on Vaughan's fourth amendment claim.

## EIGHTH AMENDMENT

Clearly established law at the time of the searches in March of 1984 provided that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment" and its prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). It was also clearly established that deliberate indifference to the "safety needs" of prisoners, as shown by prison administrators' indifference to brutal behavior by guards toward inmates, was sufficient to state an eighth amendment claim. *Hoptowit v. Ray*, 682 F.2d 1237, 1249–50 (9th Cir.1982). On appeal, Ricketts does not dispute that clearly established law existed on the eighth amendment issue, but instead asserts that the searches did not violate the prevailing standard.

Vaughan alleges that deliberate indifference to the inmates' medical needs was shown by the lack of hygiene during the searches, by the lack of training of the searchers, by the failure to check inmates' medical records before performing the searches, and by further rectal cavity searches made on inmates who were removed to the prison health unit after the searches in the hallway. At least one of the inmates removed to the health unit was subjected to a rectal probe by a female doctor with a metal clamp, even though he resisted, and his subsequent rectal bleeding was left unattended.

Taking all Vaughan's allegations as true, Ricketts cannot claim that the prison officials enjoy qualified immunity from suit for eighth amendment violations. As required for an eighth amendment violation the searches as described show more than mere negligence. The manner in which Vaughan alleges the searches were conducted constitutes an unnecessary use of force showing a wanton disregard for the health and safety of the inmates. *Compare United States v. Caldwell*, 750 F.2d 341 (5th Cir.1984) (no eighth amendment violation where rectal search was called off when possibility of injury arose, and no unnecessary force was used), *cert. denied*, 471 U.S. 1007, 105 S.Ct. 1873, 85 L.Ed.2d 166 (1985).

Ricketts claims that it may be more difficult to show an eighth amendment violation in light of a prison security measure. In *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Supreme Court held that in the context of quelling a prison disturbance, the question of whether an eighth amendment violation occurred turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21, 106 S.Ct. at 1085 (quoting *Johnson*

v. *Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). The circumstances under which Ricketts ordered the searches, while involving a threat to security, did not constitute an ongoing prison disturbance. Unlike *Whitley,* the officers were not confronted with an instantaneous decision whether to conduct the searches in the manner described.

We find that a reasonable official would understand, under law clearly established in 1984, that the conditions and manner under which Vaughan alleges the searches were conducted constituted deliberate indifference to the inmates' medical and safety needs. Ricketts was not entitled to sovereign immunity on Vaughan's eighth amendment claim.

### FOURTEENTH AMENDMENT

■ At the time of the searches in March of 1984, it was clearly established that the fourteenth amendment prohibited prison officials from treating prisoners in a fashion so "brutal" and "offensive to human dignity" as to "shock the conscience." *Rochin v. California,* 342 U.S. 165, 172, 174, 72 S.Ct. 205, 209–10, 210, 96 L.Ed. 183 (1952) (*quoted in Meredith v. Arizona,* 523 F.2d 481, 483 (9th Cir.1975). Conduct that amounts to brutality violates a liberty interest protected by the fourteenth amendment's due process clause, the right to be secure in one's person. *Meredith,* 523 F.2d at 482. In determining whether force amounts to brutality,

> a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 483 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

■ This standard was clearly established in 1984. Thus, in order for Vaughan to avert Rickett's claim of qualified immunity under the fourteenth amendment, he

must show that a reasonable prison official would have known that the digital rectal searches, conducted as alleged, were "maliciously and sadistically applied for the purpose of causing harm." Under the facts as alleged by Vaughan, a reasonable prison official in 1984 would have understood that the searches were conducted in a brutal fashion that was not justified by a need for force. The extent of possible injury was great, and at least one inmate suffered significant injury. The joking and insults directed at the inmates support an inference that the force was maliciously and sadistically applied. Ricketts was not entitled to qualified immunity on Vaughan's fourteenth amendment claim.

### CONCLUSION

We AFFIRM the district court's refusal to grant Ricketts qualified immunity from Vaughan's claims under the fourth, eighth, and fourteenth amendments.