952 F.2d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas Eugene WILSON, Defendant-Appellant.
 No. 90-10431.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1991.
Decided Jan. 14, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Wilson appeals his criminal conviction on two grounds: (1) unreasonableness of a digital search of his rectum, which led to discovery of the contraband; and (2) improper denial of his motion for change of counsel. We affirm.
 
 
 3
 On April 21, 1989, prison officials at the Federal Correctional Institution in Tucson, Arizona, received a tip from an unnamed informant that inmate Douglas Wilson possessed contraband. Wilson was a convict housed in a special unit at the prison because he had refused to provide a urine sample for drug testing. Prison officials entered Wilson's cell and escorted Wilson to an examination room at the Medical Department. Dr. Hogera, the Chief Medical Officer at the prison, conducted a digital examination of Wilson's rectum, and discovered and removed a plastic bag containing heroin. Wilson was convicted of possession of heroin.
 
 
 4
 Wilson moved to require the government to reveal the identity of the unnamed informant, or, in the alternative, to suppress the evidence discovered. He now challenges the constitutionality of the search, because the government did not establish the identity and reliability of the informant. The constitutionality of the search is a question of law we review de novo. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989).
 
 
 5
 Wilson does not challenge the manner or place of the search. His case does not raise the issues of reasonableness of manner, hygiene, training of those conducting the search, and place in which the search was conducted, which were the subject of Vaughan v. Ricketts, 859 F.2d 736, 740-41 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989), and Tribble v. Gardner, 860 F.2d 321 (9th Cir.1988), cert. denied, 490 U.S. 1075 (1989).
 
 
 6
 The Supreme Court has upheld the use of visual body cavity searches based on suspicion short of probable cause. Bell v. Wolfish, 441 U.S. 520, 559-60 (1979). In that case, the visual body cavity searches were made of all inmates after contact visits, regardless of whether there was any individualized ground for suspicion. A digital rectal search is more intrusive than a visual search. Nevertheless, we have applied the Wolfish approach, balancing the security interests of the institution against the privacy interests of the inmates, to digital body cavity searches. Vaughan, 859 F.2d at 740-41; Kennedy v. Los Angeles Police Dept., 901 F.2d 702 (9th Cir.1989). Because digital rectal searches are highly intrusive and potentially humiliating, they must be examined with particular care.
 
 
 7
 Wolfish teaches that we must consider the "scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Wolfish, 441 U.S. at 599. In Wilson's case, the scope is very intrusive, but the manner and place are unobjectionable. The issue in Wilson's case goes only to the justification.
 
 
 8
 There were three circumstances that gave rise to suspicion in this case. First, prison officials had a tip that Wilson possessed contraband. Second, Wilson had refused to provide a urine sample. Bureau of Prisons regulations rank refusing to give a urine sample in the "greatest," or most severe, category of prohibited acts, 28 C.F.R. § 541.13 (table 3), obviously because refusal suggests the use of illegal narcotics. Third, Wilson, was in special housing, which suggests an especially high need for institutional security. In these circumstances, the justification for the search was sufficient to outweigh the intrusiveness. We note that there had not been prior fruitless rectal digital searches of Wilson; the prison officials got the tip, searched once, and found narcotics.
 
 
 9
 Wilson asked for substitution of counsel, and his attorney, Glenda Edmonds, also filed a Motion to Withdraw As Attorney. This court applies a three factor analysis to review whether a district court has properly denied a motion for substitution: "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the asserted conflict created a total lack of communication such that the defendant was unable to present an adequate defense." United States v. Garcia, 924 F.2d 925, 926 (9th Cir.), cert. denied, 111 S.Ct. 2809 (1991). We review for abuse of discretion. Id.
 
 
 10
 Wilson initially made his motion for substitution only thirteen days before trial, so the timeliness factor weighs against his request. Wilson argues that in this case, "the delay would have been minimal given the simplicity of the case." Even in a simple case, though, it is reasonable to conclude that a change of counsel would probably have required a continuance, because of replacement counsel's need to find time in his or her schedule, study the case, determine how to proceed, and prepare for trial. See Garcia, 924 F.2d at 926.
 
 
 11
 The district court conducted an inquiry sufficient to conclude that Wilson's complaints about his attorney were without merit. It addressed Wilson's motion for substitution of counsel on two occasions. First, the court denied Wilson's pretrial motion on April 16, 1990. At trial, Wilson again moved the court to provide substitute counsel. In the colloquy with the judge, Wilson complained that his attorney, Ms. Edmonds, did not in his opinion have adequate expertise in the area of prisoners' rights. The judge concluded that the issues were simple and no greater expertise than Ms. Edmonds had was needed. Although Wilson's pretrial letter had alleged inadequate communication with Ms. Edmonds, Wilson told the judge that his attorney was "a nice person," and there is no evidence in the record that his alleged problems with her hindered the presentation of his defense in any way.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3