**Alvin Howard CANELL, Plaintiff,**

v.

**Oregon Department of Corrections Transport Officer BEYERS; Preston Beebe, Clackamas County Deputy Rowlands; Clackamas County in official and individual capacities, Defendants.**

CV No. 93–728–PA.

United States District Court,
D. Oregon.

Dec. 7, 1993.

---

Alvin H. Canell, pro se.

Theodore R. Kulongoski, Atty. Gen., Jan Peter Londahl, Asst. Atty. Gen., Dept. of Justice, Salem, OR, for defendants Beyer and Beebe.

Miles A. Ward, Asst. County Counsel, Oregon City, OR, for Clackamas County defendants.

## OPINION

PANNER, District Judge.

Plaintiff Alvin Canell brings this 42 U.S.C. § 1983 action against defendants Mitchell Beyers, Preston Beebe, Deputy Rowlands, and Clackamas County. Defendants move to dismiss or for summary judgment on grounds of qualified immunity. Plaintiff cross-moves for summary judgment. I deny all three motions.

## BACKGROUND

Plaintiff was incarcerated at the Oregon Corrections Intake Center ("OCIC"), which is jointly operated by the Oregon Department of Corrections ("ODC") and defendant Clackamas County ("County"). Upon arrival at the OCIC (and also upon leaving, or following any trip outside OCIC), an inmate is subjected to a "visual body-cavity search." The inmate must stand within the boundaries of a red square outlined on the floor, disrobe, lift his genitals, bend over, spread his buttocks, and cough a number of times. If the inmate does not comply, he is "taken down."

Plaintiff does not challenge defendants' right to conduct strip searches, but merely the manner in which the searches are performed. Plaintiff's Muslim faith forbids him to appear naked before either men or women. He contends the searches are conducted in an open area in full view of not just the

guards, but also up to a dozen other inmates waiting to be searched, employees just "standing around" watching, and even clerical employees who view the strip searches through a window. Plaintiff alleges the female clerical workers enjoy watching the strip searches, and says he observed a "blonde female employee looking at him" through the window as he was being searched.

Defendants concede the searches are conducted in front of a window which opens into the booking office area. However, defendants insist the window is "always" covered by a metal plate during strip searches, and a scrap of carpet is used to cover the four-inch high slot, beneath the window, through which papers and other items are passed. Perhaps the window and slot are *supposed* to be covered, but there is evidence that does not always occur. The record includes an affidavit from inmate Gary Washington stating that when he was strip searched in the same room two months after the incident involving plaintiff, the window was not covered and female office workers were present and had an unobstructed view of the proceedings through that window.

Plaintiff claims the searches violated his constitutional rights. He moves for summary judgment. The individual defendants assert qualified immunity, and indirectly contend plaintiff has not stated a claim. The County moves to dismiss because no unconstitutional policy or custom was alleged.

## STANDARDS

■ Public officials may not be held personally liable for violating a person's constitutional rights unless the right violated was sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The very conduct in question need not have been previously held unlawful, but the unlawfulness must be apparent in the light of pre-existing law. *Id.*

■ The threshold determination of whether the law governing the conduct at issue is clearly established, and whether a

reasonable official could have believed his conduct was lawful in light of clearly established legal principles, is a question of law for the court. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). As with any motion for summary judgment, evidence and the inferences therefrom must be viewed in a light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors,* 809 F.2d 626, 630–31 (9th Cir.1987).

## DISCUSSION

■ Plaintiff's claims for injunctive and declaratory relief are moot. He is no longer at the OCIC nor is there any guarantee he will ever be there again. *Johnson v. Moore,* 948 F.2d 517, 522 (9th Cir.1991). That leaves only the claims for damages.

### 1. *Qualified Immunity:*

■ Defendants contend they are entitled to qualified immunity because plaintiff has no right to be free from cross-gender searches and because prison officials have a legitimate penological purpose in conducting strip searches. Defendants' argument misses the mark. Plaintiff neither challenges the prison's right to conduct a "visual body-cavity search," nor asserts a right to be free from viewing by female prison guards—or anyone else—when such viewing is a necessary or unavoidable part of that employee's duties. What plaintiff objects to is gratuitous or unnecessary viewing, neither of which is protected by qualified immunity. *See Vaughan v. Ricketts,* 859 F.2d 736, 740–41 (9th Cir. 1988); *Valdez v. Farmon,* 766 F.Supp. 1529, 1535 (E.D.Calif.1991).

■ Visual body-cavity searches are dehumanizing and humiliating. *Kennedy v. Los Angeles Police Dept.,* 901 F.2d 702, 711 (9th Cir.1990); *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1446 (9th Cir.1989). Where permitted, such searches must be conducted in a reasonable manner, and abuses cannot be condoned. *Bell v. Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). Defendants have offered no justification for conducting visual body-cavity searches in full view of clerical workers, other inmates, or other bystanders. On the contrary, defendants concede that gratuitous

viewing is not supposed to occur. Defendants deny plaintiff's allegations, but at this stage in the proceedings plaintiff's affidavits are presumed true.

Even assuming the viewings were inadvertent, a jury could find that the location and manner in which the search was conducted made such viewings inevitable, and the invasion of privacy was not offset by overriding penological justifications. *Cf. Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir.1988) (occasional glimpses of nudity unavoidable because guards had to constantly monitor hallways) with *Vaughan,* 859 F.2d at 741 (no qualified immunity for officials who needlessly conducted rectal searches in open hallway clearly visible to other inmates and prison personnel). Defendants have also not shown that they could not have accommodated plaintiff's privacy concerns at *de minimis* cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 91, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987).

A reasonable prison official would have known the conduct alleged in this complaint would violate plaintiff's constitutional rights. Indeed, OCIC regulations caution employees to ensure that booking office personnel can not view strip searches, and instruct employees to maximize privacy for inmates being searched. That is evidence OCIC officials were aware of plaintiff's constitutional right to privacy during strip searches. Defendants are not entitled to qualified immunity.

### 2. *Frequency:*

■ Defendants argue that regardless of whether plaintiff's right to privacy was violated, a single viewing is never actionable. I disagree. A single viewing can state a claim if it is intentional and not motivated by any legitimate penological purposes. *Thomas v. Jabe,* 760 F.Supp. 120, 123 (E.D.Mich.1991). A single, isolated inadvertent viewing is probably not actionable unless the search was conducted in a manner that exhibited total disregard for the inmate's privacy rights. *Compare Grummett v. Rushen,* 779 F.2d 491, 494–95 (9th Cir.1985) with *Vaughan,* 859 F.2d at 741.

■ That does not mean defendants are entitled to one "free viewing" of each inmate. Most inmates are strip searched only twice, upon entering and leaving OCIC. If an inmate had to show he had been personally viewed on multiple occasions, then defendants could violate the rights of inmates with impunity because no one inmate would be viewed often enough to state a claim. Accordingly, repeated incidents of "inadvertent" viewings of different prisoners can amount to a violation when prison officials fail to take reasonable steps to prevent such incidents at a *de minimis* cost to legitimate penological considerations. *See Jordan v. Gardner,* 986 F.2d 1521, 1529 (9th Cir.1993) (en banc) (knowledge of risk of harm plus failure to act to prevent the harm constitutes deliberate indifference).

### 3. *Defendant Clackamas County:*

■ A county is liable under § 1983 only for acts the county has sanctioned or ordered, as distinguished from the independent acts of its employees. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). County policy is set by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Id.* at 483–84, 106 S.Ct. at 1300; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Defendant Clackamas County jointly operates the OCIC, assisted in its design and construction, has considerable input into procedures and policies at the OCIC, and the duty to implement those policies. Choices made in the design and operation of the facility may have played an important and foreseeable role in the alleged violation of plaintiff's rights. I conclude that the County is a proper defendant in this case.

### CONCLUSION

Defendants' motions for dismissal (# 22) or summary judgment (# 32) and plaintiff's cross-motion (# 42) for summary judgment are denied. The stay (# 37) upon discovery is dissolved.