**Frank GALLARDO**

v.

**Warden Lori DiCARLO of California State Prison at Chino**

**No. ED CV 01–413RT(SGLX).**

United States District Court,
C.D. California.

May 13, 2002.

John Amoroso, Esq., Amoroso Law Corporation, Los Angeles, for Plaintiff.

Bill Lockyer, State Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford, Senior Assistant Attorney General, Darrell L. Lepkowsky, Supervising Deputy Attorney General, Robert D. Wilson, Deputy Attorney General, Los Angeles, for Defendant.

PROCEEDINGS: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LORI DICARLO'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6).

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered Warden Lori DiCarlo ("DiCarlo")'s Motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) ("Rule 12(b)(6)"); Plaintiff Frank Gallardo ("Gallardo")'s opposition; and DiCarlo's reply. Based on such consideration, the court concludes as follows:

## I.

### BACKGROUND [1]

On February 7, 2000, Gallardo, an inmate at the Chino State Prison, was physically assaulted by California Department of Corrections ("CDC") correctional officers without provocation or other justification. The officers battered Gallardo with their fists and feet, which caused "grave physical injuries to his body and nervous system" and required Gallardo to be hospitalized for 31 days. Less than two weeks after Gallardo's release from the hospital, on March 24, 2000, CDC correctional officers handcuffed Gallardo behind his back and forcefully threw him into his cell, causing injuries to his neck, back, knees, and wrists. The injuries to Gallardo's back and knee are permanent.

Gallardo's FAC alleges 1) against the Defendants Does 1 to 10 a claim for a violation of 42 U.S.C. § 1983 ("Section 1983") by depriving Gallardo of his constitutional rights under the Eighth Amendment to the United States Constitution; 2) against Warden DiCarlo a claim for a violation of Section 1983 by depriving Gallardo of his constitutional rights under the Eighth Amendment to the United States Constitution; and 3) against all Defendants a supplemental state claim for assault and battery.

---

1. The following facts are taken from Gallardo's FAC. When the court considers defendant's motion to dismiss a FAC pursuant to Rule 12(b)(6), the court must accept as true all material allegations in the FAC, as well as reasonable inferences to be drawn from them. See Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir.1998). The court may also consider the content of matters that may be judicially noticed. See, e.g, Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir.1988); Mullis v. United States Bankruptcy Court of the Dist. of Nevada, 828 F.2d 1385, 1388 (9th Cir.1987).

## II.

## ANALYSIS

### A. Legal Standard Governing the Motion to Dismiss Pursuant to Rule 12(b)(6)

DiCarlo contends that a heightened pleading standard applies in an action, like the one at bar, when defendant asserts qualified immunity and defendant's knowledge or intent is an element of plaintiff's constitutional claim. Indeed, plaintiffs alleging against prison officials a violation of the cruel and unusual punishment provision of the Eighth Amendment based on excessive force must ultimately prove defendant's malicious knowledge or intent. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 835–36, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994).

It is true that the Ninth Circuit has established a heightened pleading standard in " § 1983 cases where the defendant is entitled to assert the qualified immunity defense and where her or his knowledge or intent is an element of the plaintiff's constitutional tort." *Lee v. City of Los Angeles,* 250 F.3d 668, 679–80 & n. 6 (9th Cir.2001) (quoting *Branch v. Tunnell,* 14 F.3d 449, 452 (9th Cir.1994)).[2] The Circuit's heightened pleading standard is as follows:

[I]n order to survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity.

*Branch,* 14 F.3d at 452.

However, the United States Supreme Court has precluded the use of a heightened pleading standard in such a situation. *See Crawford–El v. Britton,* 523 U.S. 574, 594, 118 S.Ct. 1584, 1594–95, 140 L.Ed.2d 759 (1998). In 1998, the *Crawford–El* Court reviewed the heightened pleading standard of the District of Columbia Circuit,[3] *see, e.g., Siegert v. Gilley,* 895 F.2d 797, 801–02 (D.C.Cir.1990), *aff'd on other grounds,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), whose "lead" the Ninth Circuit "follow[ed]" in devising its own heightened pleading standard, *see Branch,* 14 F.3d at 452. Commenting that for the District of Columbia Circuit "to change the burden of proof for an entire category of claims would stray from the traditional limits on judicial authority," the court struck down the D.C. Circuit's heightened pleading standard formerly applicable to "damage actions against government officials." *Crawford–El,* 523 U.S. at 580, 118 S.Ct. at 1588 (citation omitted).[4]

2. The *Lee* court noted that the United States Supreme Court has held that a heightened pleading standard cannot be applied to a complaint alleging municipal liability under Section 1983. *See* 250 F.3d at 679 (citing *Branch,* 14 F.3d at 450) (citing in turn *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993)). *Leatherman* explicitly reserved the question "whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." 507 U.S. at 166–67, 113 S.Ct. at 1162.

3. As is the case with the Ninth Circuit's heightened pleading standard, the D.C. Circuit's heightened proof standard applied when plaintiff sued a government official, defendant asserted the defense of qualified immunity, and plaintiff's claim depended on proving defendant's improper motive. *See Crawford–El,* 523 U.S. at 580–84, 118 S.Ct. at 1588–90.

4. More recently, a unanimous Supreme Court held that a heightened pleading standard is also inapplicable in Title VII employment discrimination actions. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998–99, 152 L.Ed.2d 1 (2002). While the Court's

Post–*Crawford–El* courts of appeal opinions have expressed near-unanimity that their respective circuits' heightened pleading standards have been rendered inapplicable by *Crawford–El.* The Seventh Circuit, citing *Crawford–El,* has stated that "[c]ivil rights complaints are not held to a higher standard than complaints in other civil litigation." *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir.1998) (Easterbrook, J.); *see also Walker v. Thompson,* 288 F.3d 1005, 1006 (7th Cir.2002) (Posner, J.) ("As the Supreme Court has recently affirmed ... and we have held time and again, ... there is no requirement in federal suits of pleading the facts or the elements of a claim, with the exceptions ... listed in Rule 9.") (citing *Swierkiewicz,* 122 S.Ct. at 995; *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002); *Beanstalk Group, Inc. v. AM Gen. Corp.,* 283 F.3d 856, 863 (7th Cir.2002)). The D.C. Circuit similarly enforced *Crawford–El:* "plaintiffs making constitutional claims based on improper motive need not meet any special heightened pleading standard." *Harbury v. Deutch,* 233 F.3d 596, 611 (D.C.Cir.2000) (citing *Crawford–El*), *cert. granted sub nom. Christopher v. Harbury,* —— U.S. ——, 122 S.Ct. 663, 151 L.Ed.2d 578 (2001).

The Third, Sixth, and Tenth Circuits, which also had adopted heightened pleading standards for such Section 1983 claims, likewise agree that *Crawford–El* foreclosed the application of their heightened pleading standards. *See Ray v. Kertes,* 285 F.3d 287, 297–98 (3d Cir.2002) (reversing dismissal of civil rights plaintiff's complaint based, in part, on the district court's application of a heightened pleading standard, and commenting that "[a]s the [Supreme] Court pointed out, heightened pleading standards are inconsistent with the 'liberal system' of 'notice pleading' set up by the federal rules.'"); *Currier v. Doran,* 242 F.3d 905, 912–16, 916 (10th Cir.2001) (holding that the Tenth Circuit's "heightened pleading requirement cannot survive *Crawford–El*"); *Thaddeus–X v. Blatter,* 175 F.3d 378, 399 (6th Cir.1999) (en banc) (plurality) (citing *Crawford–El* for the proposition that "plaintiff cannot be required to meet a heightened burden of proof simply because his cause of action includes a motive element," and stating that "*Crawford–El* disallows any type of heightened pleading standard").

The First Circuit is the only court to have held that its heightened pleading standard survives *Crawford–El.* *See Judge v. City of Lowell,* 160 F.3d 67 (1st Cir.1998). The First Circuit focused on one sentence in *Crawford–El* in ruling that its heightened pleading standard, which, admittedly, mimics this Circuit's standard,[5] does not contravene *Crawford–El:* "[T]he [trial] court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Judge,* 160 F.3d at 74 (quoting *Crawford–El,* 523 U.S. at 598, 118 S.Ct. at 1596–97) (internal quotation omitted).

holding was limited to the propriety of a heightened pleading standard in the employment discrimination context, the *Swierkiewicz* Court's reasoning was sweeping: "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b) ... provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts." *Id.* at 999.

5. The First Circuit's heightened pleading standard is as follows: in actions in which plaintiff sues a government official for violating her constitutional rights, "the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone." *Judge,* 160 F.3d at 72.

However, *Judge* takes this lone sentence out of context, and thus significantly misreads *Crawford–El.* The text quoted by the First Circuit was part of the *Crawford–El* Court's opinion that responded to the concern that eliminating a heightened pleading requirement would insufficiently "protect[ ] the substance of the qualified immunity defense." *Crawford–El*, 523 U.S. at 597, 118 S.Ct. at 1596. The *Crawford–El* Court stated:

> When a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings. The district judge has two primary options prior to permitting any discovery at all. First, the court may order a reply to the defendant's or a third party's answer under Federal Rule of Civil Procedure 7(a), or grant the defendant's motion for a more definite statement under Rule 12(e). Thus, *the court may insist that the plaintiff put forward specific nonconclusory allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment.*

*Id.* at 598, 118 S.Ct. at 1596–97 (emphasis added). The context of the Court's opinion reveals that the Court was actually stating that trial courts can employ safeguards other than heightened pleading standards to regulate such claims, obviating the need for a heightened pleading standard. The Court's use of the term "Thus" preceding the sentence quoted by the First Circuit signifies that the sentence in question refers to the text preceding it. That is, a trial court may require plaintiff to "put forward specific nonconclusory factual allegations" prior to the commencement of discovery in one of two ways: either 1) by ordering that plaintiff's reply to defendant's answer include such allegations pursuant to Rule 7(a) of the Federal Rules of Civil Procedure; or 2) by granting a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.[6] Absent either of these two scenarios-which is present neither in this case nor in *Judge–Crawford–El* prohibits a court from requiring a civil rights plaintiff to meet any heightened pleading standard.[7]

While the Tenth Circuit implicitly called into question the Ninth Circuit's continued use of a heightened pleading standard, *see Currier*, 242 F.3d at 913 (citing *Branch* as an example of a heightened pleading standard adopted prior to *Crawford–El*), neither the Ninth Circuit nor any district court within the Circuit in a published order has examined the Circuit's heightened pleading standard in light of *Crawford–El.* As discussed above, this court concludes that the Ninth Circuit's heightened pleading standard does not survive *Crawford–El,* and therefore the court will apply a non-heightened pleading standard in determining DiCarlo's Motion to dismiss Gallardo's FAC.

A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored, *see Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir.1986), and may be granted only in extraordinary circum-

---

**6.** This court notes that *Crawford–El permits* a district court to so require. The Court's language is not mandatory, but advisory.

**7.** The Tenth Circuit agrees with this court's rejection of the First Circuit's analysis. *See*

*Currier*, 242 F.3d at 915 ("This court respectfully disagrees with the First Circuit in its conclusion that the above language from *Crawford–El* saves circuit-imposed heightened pleading requirements.").

stances, *see Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (citing a "powerful presumption against rejecting pleadings for failure to state a claim"). Essentially, a motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure ("Rule 8(a)(2)"). *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294–96 (1990).

The burden imposed by Rule 8(a)(2) is a minimal one. Rule 8(a)(2) requires parties seeking relief in federal court by way of complaint, counterclaim, cross-claim, or third party complaint, to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991) ("[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated.").

As the Supreme Court has noted, when evaluating a complaint for failure to state a claim, the question is not whether the facts stated in the complaint, if proven, would entitle the plaintiff to any relief. Instead, the question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).[8]

## B. FAC's Compliance With Notice Pleading Standard

Gallardo contends that DiCarlo inflicted cruel and unusual punishment upon him, in violation of his Eighth Amendment rights.[9] While prisoners forfeit many liberties by dint of their incarceration, *see, e.g., Hudson v. Palmer,* 468 U.S. 517, 525–26, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (prisoners have no reasonable expectation of privacy in their prison cells), they nonetheless possess most constitutional rights. *Cf. Madrid v. Gomez,* 889 F.Supp. 1146, 1244 (N.D.Cal.1995) (Henderson, C.J.) ("Nonetheless, those who have transgressed the law are still fellow human beings-most of whom will one day return to society."). Among rights they retain is the right to be free from cruel and unusual punishment. *See, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 849–50, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) (referring to prisoner's Eighth Amendment rights); *see also Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) (citing *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection in cases where the deliberate use of force is challenged as excessive and unjustified.'"); *Armendariz v. Penman,* 75 F.3d 1311, 1319 (9th Cir.1996) (Eighth Amendment is the exclusive claim upon which a prisoner may seek relief for excessive force under a Section 1983 action).

---

**8.** In assessing a complaint for failure to state a claim, "facts consistent with the allegations of a complaint" include all "specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). Plaintiff will have the benefit of those implied specific facts when a court assesses her complaint for failure to state a claim unless plaintiff pleads facts that necessarily contradict them.

**9.** The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

In order to prevail on an Eighth Amendment claim, plaintiff must satisfy two elements:

First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim ... based on a failure to prevent harm, the inmate must show that his is incarcerated under conditions posing a substantial risk of serious harm.

The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates that Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.

*Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977 (internal quotations and citations omitted).

While the subjective prong of most Eighth Amendment claims are analyzed according to a "deliberate indifference" standard, *see Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), courts apply an even stricter standard to excessive force cases against prison officials and employees, *see Farmer*, 511 U.S. at 835, 114 S.Ct. at 1978. In such situations, plaintiff "must show that officials applied force 'maliciously and sadistically' for the very purpose of causing harm, or, as the Court also put it, that officials used force with 'a knowing willingness that [harm] [would] occur.' " *Id.* at 835–36, 114 S.Ct. at 1978 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)).

■ Without employing such trigger words as "malicious," "sadistic," or "knowing willingness," Gallardo's FAC provides, at the very least, a short and plain statement of the Eighth Amendment claim against DiCarlo showing that he is entitled to relief. Paragraph 14 of the FAC states:

DiCarlo permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable, and illegal use of excessive force by prison guards constituting cruel and unusual punishment on plaintiff: Defendant did not discipline or prosecute or in any manner deal with known incidents of use of excessive force by prison guards. [sic] and refused to investigate complains [sic] of incidents of wrongful use of excessive force by prison guards on inmates. By means of both inaction and cover-up of such use of excessive force, [DiCarlo] encouraged prison guards to use excessive force on inmates. [DiCarlo] has maintained no system of review of complain [sic] of the use of excessive force or to discipline prison guards who in fact use excessive force on prison inmates.

First, the allegations in the FAC as to Gallardo's sustaining physical injuries from custodial officers' use of force on him requiring a 31–day hospitalization and resulting in permanent physical injuries, and also being incarcerated in a prison in which the warden encourages excessive force, satisfy the objective element; the injuries are sufficiently serious, and the conditions pose a substantial risk of serious harm. *Compare Hutchinson v. Sgt. Pangburn*, 1998 WL 150959, *3, *6 (S.D.N.Y.1998) (eight-day hospitalization and various injuries to, inter alia, shoulder, eyes, and nose are serious injuries). If curtailing an inmate's outdoor exercise time to 45 minutes per week constitutes serious injury, *see Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir.2000), and being exposed to asbestos for 45 hours is similarly sufficiently serious, *see Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.1995), sustaining permanent physical injuries must also be sufficiently serious.

■ As to the second element regarding DiCarlo's culpable state of mind, the alle-

gations that she encouraged and ratified a pattern of excessive force by prison employees under her supervision are sufficient to state facts evidencing a "malicious" and "sadistic" state of mind for the "purpose of causing harm." It evinces a "knowing willingness" that harm will occur.[10]

## C. Qualified Immunity

DiCarlo asserts that she is entitled to dismissal of the FAC on the grounds of qualified immunity.[11] In Section 1983 claims, the doctrine of qualified immunity shields government officials from civil damage liability for acts arising out of their government responsibilities "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Jeffers*, 240 F.3d at 853 (citation omitted); *see Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

The Supreme Court recently revisited the issue of qualified immunity in the excessive force context, setting forth its familiar two-part test: First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If the answer is "no," the inquiry is over; defendant is immune from suit. *See id.* If the answer is "yes," however, then the court must consider "whether the right was clearly established" at the time of the constitutional violation. *Id.* This consideration "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* In other words, "[t]he contours of the right must be

10. The court concludes that Gallardo's FAC would satisfy even the heightened pleading standard, if it were applicable. Though DiCarlo contends that Gallardo "has failed to allege any facts," her contention is contradicted by the plain text of the FAC. After setting forth a conclusory allegation (DiCarlo "permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable, and illegal use of excessive force by prison guards constituting cruel and unusual punishment on plaintiff"), Gallardo provides the basis for the allegation: DiCarlo "did not discipline or prosecute or in any manner deal with known incidents of use of excessive force by prison guards and refused to investigate complains [sic] of incidents of wrongful use of excessive force by prison guards on inmates." While DiCarlo may obviously dispute the FAC's factual allegations, the FAC is "specific and concrete enough" to enable DiCarlo to prepare a response and a motion for summary judgment based on qualified immunity. While a more detailed FAC could obviously further assist DiCarlo, the heightened pleading standard would demand no more than the FAC provided.

11. In a previous pleading, DiCarlo claimed that the Section 1983 claim alleged against her in the original Complaint should be dismissed because Gallardo had not adequately pled supervisory liability. The court's analysis regarding supervisory liability remains unchanged and equally applies to the FAC. Gallardo has satisfactorily pled supervisory liability in the FAC.

The Ninth Circuit has held: "Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under [Section 1983]. A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 240 F.3d 845, 858 (9th Cir.2001) (citing *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991); *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir.1989)). Far from merely asserting vicarious liability, Gallardo claims DiCarlo, in her supervisory role, "encouraged" and "ratified" the illegal use of excessive force by subordinate state employees. Accepting the truth of Gallardo's allegations, the court finds that Gallardo has alleged a sufficient causal connection between DiCarlo's wrongful conduct and a violation of Gallardo's rights under the Eighth Amendment.

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (qualifying that "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent") (internal citations omitted).

The relevant Eighth Amendment jurisprudence is outlined above. *See* Section II.B., *supra* (citing, inter alia, *Farmer, Estelle,* and *Hudson* ). Also in Section II.B. is the court's ruling that the facts alleged in the FAC satisfy the Eighth Amendment's objective and subjective elements. Therefore, assuming that the facts alleged in the FAC are true, DiCarlo violated Gallardo's Eighth Amendment right to be free from cruel and unusual punishment.

As to whether Gallardo's Eighth Amendment right was clearly established at the time of the violation, the court must assess "whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right." *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001). In other words, "the question is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights." *Id.* (citing *Saucier,* 533 U.S. at 205, 121 S.Ct. at 2158).

■ In the specific context of the conduct alleged in the FAC, the court concludes that the right in question was delineated at the time of the violation with sufficient clarity that DiCarlo, as a reasonable correctional officer, should have known that her alleged conduct deprived Gallardo of his Eighth Amendment right against cruel and unusual punishment. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)); *see also Clemmons v. Bohannon,* 956 F.2d 1523, 1531 (10th Cir. 1992) ("Persons are sent to prison as punishment, not for punishment.") (quoting *Battle v. Anderson,* 564 F.2d 388, 395 (10th Cir.1977)). More specifically, prison administrators have an affirmative duty "to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray,* 682 F.2d 1237, 1250 (9th Cir.1982).

The Ninth Circuit has held on numerous occasions that "prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an eighth amendment [sic] claim." *Vaughan v. Ricketts,* 859 F.2d 736, 741 (9th Cir. 1988), *overruled on other grounds by Koch v. Ricketts,* 68 F.3d 1191 (9th Cir.1995); *Hoptowit,* 682 F.2d at 1249 ("Indifference [concerning violence against prisoners] on the part of the administration" that leads to "guard brutality" violates inmates' Eighth Amendment rights.) *See also Madrid,* 889 F.Supp. at 1248.[12]

---

12. The *Madrid* plaintiffs were prisoners who advanced two theories in support of their Eighth Amendment claim. The first was that there was a pattern and practice of prison staff using excessive force against inmates, and defendants, including prison guards and the prison's warden, "permitt[ed] this pattern to develop and persist." 889 F.Supp. at 1247. The second, which resembles Gallardo's claim, was that "defendants have failed to establish adequate systems for controlling use of force by prison staff against inmates ... and that inmates have suffered serious injuries as a result." *Id.* at 1248. The Northern District of California, in 1995, found primarily for plaintiffs with regard to their first theory, and provided only dicta with respect to their second theory: "[C]ase precedent provides general support for such a theory." *Id.* at 1248 n. 196.

DiCarlo's alleged indifference regarding excessive force inflicted on inmates by her subordinates-evidenced by her alleged "inaction and cover-up of ... excessive force"-contravened Eighth Amendment jurisprudence established at the time of her alleged conduct. DiCarlo could not have reasonably but erroneously believed that her fostering an environment of permitting, encouraging, tolerating, and ratifying excessive force against inmates by those under her supervision did not violate Gallardo's Eighth Amendment rights. She is not entitled to qualified immunity based on the allegations in the FAC.

**D. Statute of Limitations As to the Supplemental State Claim for Assault and Battery**

 " 'Statute of limitations' is the collective term commonly applied to a great number of acts, or parts of acts, that prescribe the periods beyond which a plaintiff may not bring a cause of action." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 395, 87 Cal.Rptr.2d 453, 461, 981 P.2d 79 (1999). Plaintiff must bring a claim within the applicable statute of limitations period after accrual of the cause of action. *See id.* at 397, 87 Cal.Rptr.2d at 463, 981 P.2d 79; *see also O'Connor v. Boeing N. Am., Inc.*, 92 F.Supp.2d 1026, 1036 (C.D.Cal.2000).

 Under the common law statute of limitations rule, a claim "accrues upon the occurrence of the last element necessary to complete the claim." *See O'Connor*, 92 F.Supp.2d at 1036.[13] The statute of limitations is an affirmative defense, and defendant has the burden of proving the action is time-barred. *See id.* at 1037; *California Sansome*, 55 F.3d at 1406 (citing California cases).

 California Government Code § 911.2 provides that a personal injury claim against a state agency or employee of such agency must be presented to the Government Claims Program at the Victim Compensation and Government Claims Board (formerly State Board of Control) ("Board") within six months after the accrual of the cause of action. Therefore, Gallardo must have presented to the Board his assault and battery claim[14] regarding the March 24, 2000, incident by September 24, 2000.[15]

Gallardo alleges in his Complaint that he "complied with the applicable California claims statutes." However, DiCarlo has submitted a declaration from the Custodian of Records for the Board stating that Gallardo never filed a claim with the Board as to the March 24, 2000, incident. Pursuant to Federal Rules of Evidence, Rule 201(c), the court takes judicial notice of the

**13.** There is an alternative test-the discovery rule-to assess whether a claim is barred by the applicable statute of limitations. The discovery rule postpones accrual of a claim until the "plaintiff discovers, or has reason to discover, the cause of action." *Norgart*, 21 Cal.4th at 397, 87 Cal.Rptr.2d at 463, 981 P.2d 79. "A plaintiff ... who intends to rely on the discovery rule to toll the orthodox limitation period, must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *CAMSI IV v. Hunter Tech. Corp.*, 230 Cal.App.3d 1525, 1536, 282 Cal.Rptr. 80, 86 (Cal.Ct.App.1991) (internal quotation omitted); *see also California Sansome Co. v. U.S.*

*Gypsum*, 55 F.3d 1402, 1407 (9th Cir.1995) (citing *CAMSI IV*). Gallardo's complaint, however, does not specifically plead any facts addressing this test, and therefore the discovery rule does not apply.

**14.** In California, battery is "harmful or offensive contact, intentionally done," 5 B.E. Witkin, Summary of California Law § 347 (9th ed.1988), and assault is "the apprehension of such contact," *Id.*

**15.** Gallardo's assault and battery claim relates solely to the March 24, 2000 incident. In a previous Order, this court dismissed Gallardo's assault and battery claim regarding the February 7, 2000, incident.

content of that declaration and judicially notices it to be a fact that Gallardo did not file a claim with the Board within six months from the alleged assault and battery on March 24, 2000. The court finds that the declaration is a source whose accuracy cannot reasonably be questioned.

Because Gallardo did not file any claim with the Board within six months after the accrual of his assault and battery claim based on the March 24, 2000, incident, his third claim for assault and battery is barred because it was not filed within the applicable statute of limitations period. *See Ellis v. City of San Diego, California,* 176 F.3d 1183, 1189–90 (9th Cir.1999) (dismissing state tort claim because plaintiff did not comply with the statute of limitations period set forth in Section 911.2). Thus, the court will dismiss the state claim with prejudice.

## III.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT:

1) DiCarlo's Motion to dismiss the First Amended Complaint is GRANTED in part and DENIED in part as follows:

a) The Motion is denied as to the second claim against her, and

b) The Motion is granted as to the third claim with prejudice.

2) DiCarlo shall file an Answer to the second claim of the First Amended Complaint no later than eighteen (18) days from the date of this Order.